———o———

FREDERICK STEINES *et al.*, Appellants, *v.* FRANKLIN COUNTY *el al.*, Respondents.

1. *Equity — County Court, bonds given by for building of county road — Injunction to restrain issue of.*—A bill in equity will not lie to enjoin the assessment, levy and collection of a tax for the purpose of paying bonds given by a County Court for the construction of a county road, as a complete remedy exists at law.

2. *County roads — County Courts cannot give bonds for without submitting matter to popular election — Such bonds may be validated in what manner — Construction of statute.*— Section 13 of the act of February 16, 1865, concerning roads and highways (Sess. Acts 1865, p. 120), declared among other things as follows: " Before any expenditures shall be made by County Courts for the purpose contemplated by this act, the County Courts may, for the purpose of information, submit the amount of the proposed expenditures to the voters of the respective counties; * * * and if a majority of the voters shall approve of such proposed appropriation, the court may proceed and improve the roads." * * * Under this act the County Court of Franklin county had no right to proceed of its own motion, without submitting the question to the voters of the county, to give county bonds for the building of a county road.

When the rights of third persons are involved, or the public good requires it, the word *may*, used in a law, should always be construed to mean *shall*.

County Courts are only the agents of the county, with no powers except those which are granted, defined and limited by law; and, like all other agents, they must pursue their authority and act within the scope of their power.

In said case the holders of the bonds were bound to see that the power authorizing the issue of the bonds existed—that is, that the voters had conferred the power at a popular election. Having done so, the holders might assume the existence of certain facts lying peculiarly within the cognizance of the county agents, and upon which the right to exercise the power depended; such as the facts that the requisite number of votes had been cast, and that the election was regular. In the case supposed, no election ever having been ordered, and no vote having been taken, the power to issue the bonds did not exist; the court had no jurisdiction whatever, and acted wholly without authority. Hence the bonds were void, and the creditors could not recover on them.

But under the act of March 21, 1868, authorizing County Courts to issue bonds for the purpose of paying for the building of bridges and macadamized roads theretofore contracted for and built (Sess. Acts 1868, p. 42), the County Court of Franklin county had authority to take up the original bonds and issue others in lieu thereof; and such bonds would be valid. The Legislature had the power to pass the act for the purpose of authorizing such new bonds; and its generality was not, under our constitution, an insuperable objection to it. The original contract having been made by a county, although void, might be validated by such subsequent enactment. (See Hann. & St. Jo. R.R. Co. v. Marion County, 36 Mo. 294; Barton County v. Walser, 47 Mo. 189.)

## Appeal from St. Louis Circuit Court.

*Crews, Letcher & Laurie,* for appellants, among other points made the following, in respect to the powers and acts of municipal corporations:

Where power is given upon condition, the condition must be fulfilled or the power is never acquired. Where the law prescribes their acts to be of record, then no act unrecorded can be valid; and this applies to acts preliminary to the acquisition of power, as well as to acts done after power is acquired. Where power is not acquired, or where acquired and the acts done under it are not of record, when the law requires they shall be, negotiable paper issued without such power acquired, or without such record, is void. The want of power and the defect of record are presumed by the law to be known to every person, and therefore as to these particulars there can be no such character or party as a *bona fide* holder of negotiable paper for value, without notice.

(23 Mo. 483 ; 26 Mo. 272 ; 41 Mo. 47; 42 Mo. 171 ; 43 Mo. 353 ; 45 Mo. 242 ; 23 N. Y. 439, two cases ; also 40 Barb. 579 ; 11 Ohio St. 183 ; 13 Ohio St. 330 ; 15 Ind. 411 ; 19 Wis. 280 ; 38 Ill. 44 ; 19 Iowa, 199; 3 Kernan, 631 ; 1 Pars. Bills and Notes, 119, 275–7.) And as to defects in the records of the County Courts, see Wagn. Stat. ch. 41 ; 8 Mo. 235 ; 33 Mo. 169 ; 41 Mo. 289 ; 19 Wis. 280 ; 42 N. H. 125 ; 38 Ill. 44 ; 24 How. 288.

The act of March 21, 1868, does not apply to work uncontracted for. The act was passed while this suit was pending, and is not within the legislative authority because retrospective in its nature and violative of the vested rights of property. (3 N. H. 473 ; 4 N. H. 16 ; 10 N. H. 24, 380 ; 5 N. H. 352 ; Shawnee County v. Carter, 2 Kansas, 115 ; Jenkins v. Duanesburgh, 46 Barb. 294; 3 Sto. Con., §§ 1392–3.)

*Ewing & Holliday*, for appellants.

Bonds issued prior to 1868, and without a vote of the people, were absolutely void, and were not validated by the act of 1868. The first act, requiring a vote before expenditures should be incurred, was passed in 1864, re-enacted in the revision of 1865, was in force when the act of 1868 was passed, and the whole law re-enacted at the same session, with some modifications, and among others a provision making it peremptory on the courts, in terms, to take a vote of the people before issuing any bonds for the purposes expressed in the act. So far from relaxing, the Legislature evidently intended to adhere more rigidly to the policy previously declared on that subject, and meant to restrain within narrower limits the powers of County Courts.

If the omission to take a vote of the people was a defect, and such a one as needed further legislation, certainly the Legislature would have pointed to this defect in some appropriate or intelligible language or terms.

The aim of a curative act is always special and particular ; although it may be general in its application to a class of things or objects, it is pointed and distinctive as to the cause or the supposed necessity of it. Where several reasons are supposed to

influence legislative action, or are invoked in the interpretation of a law, and some of these only are mentioned or referred to in the language of the act, those not alluded to or indicated cannot be brought within the intention or spirit of the law. *A fortiori,* where the supposed motives to the enactment are two-fold, and the primary one is not disclosed by any terms in the act that would make it apparent, while the minor consideration is clearly manifested in plain language, the former cannot be brought within the scope and meaning of the act without violating all rules of interpretation. The application of this rule to the case at bar is evident. This act can have effect as respects the interest that such bonds might bear; the former law allowing only six, while this allowed ten per cent. This, together with the removal of restriction in the sale of bonds, is the whole scope of the act. There was an apparent and adequate reason for the change of the law in these respects, but no apparent or sufficient reason for authorizing the issue of bonds to pay for work already done without the sanction of the people.

As the bonds issued prior to the enactment of the law of 1868 were absolutely void in the hands of the holders, the bonds issued in lieu of them, and now held by the respondents, are in like manner void, unless the act last referred to authorized their issue without submitting the question to a vote of the people. But this it did not do ; for while the merely incidental matters of the rate of interest and the removal of restrictions that previous laws imposed in the disposition of the bonds are expressly provided for, there is not a syllable even indicating, much less expressing, the intention of the Legislature to authorize the issue of bonds, or to borrow money or incur expenditures for any of the purposes contemplated by said act, without first taking the sense of the people on the subject.

*Sharp & Broadhead,* for respondents.

The County Court of Franklin county having authority by law to issue bonds for roads, bridges, etc., after a vote therefor, and having issued them, regular on their face, and to all appearances legal, and having made them negotiable instruments, and they

having been put into circulation, and purchased by innocent third persons, they were not, in the hands of such innocent purchasers, subject to the inquiry whether the County Court had performed its duties under the law before issuing them, or had caused a vote to be taken. Such purchasers may assume that they were issued according to law, and the county is estopped, as against them, from asserting that its officials failed to discharge their duties under the law before issuing them.

And further, without a vote being taken, the county, by its officers, made contracts for the work, superintended the work, made estimates of the work, accepted the roads when completed, issued and sold the bonds, paid interest on them for two years, and thereby ratified the bonds and waived any irregularity in their issue; and equity will not now aid them to repudiate the bonds, and thus victimize innocent purchasers upon an altar erected by themselves. (Commissioners of Knox County v. Aspinwall, 21 How., U. S., 539; Bissell *et al.* v. City of Jeffersonville, 24 How. 287; Supervisors of Marshall County v. Schenck, 5 Wall. 772; Rogers v. City of Burlington, 3 Wall. 654; Mercer County v. Hackett, 1 Wall. 83; Van Hostrup v. Madison County, *id.* 291; Gelpcke v. City of Dubuque, *id.* 175; Meyer v. City of Muscatine, *id.* 384; Moran v. Commissioners, etc., 2 Black, 722; County v. Rogers, 7 Wall. 181; Mygatt v. City of Green Bay, 8 Am. Law Reg., O. S., 271; Flagg v. City of Palmyra, 33 Mo. 440; Barrett v. Schuyler County, 44 Mo. 197; 14 Penn. St. 82; 19 Ill. 406; 24 Ill. 75; 2 Metc. 56; 15 Ind. 395; 6 Ellis & B. 327; 10 Wis. 136; 33 Penn. St. 33; 31 Miss. 216.)

By the act of 1868 (Sess. Acts 1868, p. 42) the County Court was authorized to make the bonds in question for work theretofore contracted for and done, and no vote was required; but the act gives new, full and ample power to the County Court to issue the bonds in question for the work which had been done thereunder. The court ordered the bonds to issue, they were issued in compliance with that act, and recited the act as authority for their issue; were tendered to and received by the holders of the first bonds, and the old bonds surrendered. The bonds in question were not, therefore, subject to any question of power under

the laws of 1865 or 1866, or of regularity in the execution of power. It was competent for the Legislature to cure any defects in the issue of the bonds — to legalize what was before illegal in their issue — or to give new power for the issue of valid bonds in lieu of others improperly issued. The act of March 21, 1868, was within the province of the Legislature, and the bonds thereunder are freed from any question of power, or the mode of its exercise. (15 Conn. 475; 1 Wall. 202; 7 Wall. 181; 9 Wall. 477; 6 Iowa, 304; 36 Mo. 294.)

*James Taussig*, for respondents.

I. The bonds issued by Franklin county are commercial securities, negotiable, intended to pass from hand to hand by delivery, and subject to all rules governing such securities. (Mercer v. Hackett, 1 Wall. 93; Commissioners, etc., v. Bright, 18 Ind. 93; Wood v. Lawrence, 1 Black, 386; Commonwealth v. Perkins, 43 Penn. St. 400; Moran v. Miami County, 2 Black, 731; Barrett v. Schuyler County, 44 Mo. 200; Gelpcke v. Dubuque, 1 Wall. 206.)

II. The power to issue the bonds is derived from the law which authorizes the work to be done and money to be borrowed to pay for it. The election provided in the law is not the source of the power, but only a preliminary condition for its exercise.

III. A purchaser of such bonds is not bound to look beyond the face of the bonds and the law under which they purport to be issued; and he has a right to presume, in the absence of actual notice to the contrary, that all steps preliminary to the issue of the bonds have been done in the form, time and substance required by law. And where the law requires an election to authorize an expenditure of money or issue of bonds, a purchaser is warranted in assuming, from the actual issuing of such bonds, that such election has been duly held or waived. The county is estopped from denying that the power granted by the law was properly executed, because such denial would be a fraud against the purchaser. (Commissioners of Knox County v. Aspinwall, 21 How. 544–6; Bissell v. Jeffersonville, 24 How. 297, 299; Mercer County v. Hackett, 1 Wall. 92–6; Van Hostrup v.

Madison, *id.* 297; Meyer v. Muscatine, *id.* 393; Gelpcke v. Dubuque, *id.* 175–223; Rogers v. Burlington, 3 Wall. 667; Supervisors v. Schenck, 5 Wall. 777–8; Lee County v. Rogers, 7 Wall. 181; Moran v. Miami County, 2 Black, 731; Town of Duanesburgh v. Jenkins, etc., R.R. Co., 40 Barb., 'N. Y., 574; Stearn v. Town of Genoa, 23 N. Y. 439; People *ex rel.* Fiedler v. Mead *et al.*, 24 N. Y. 114; Flagg v. Palmyra, 33 Mo. 446; Hann. & St. Jo. R.R. v. Marion County, 36 Mo. 294; Barrett v. Schuyler County, 44 Mo. 199.) The plaintiffs can derive no comfort from the adjudications of this court in the cases of Leavenworth & Des Moines R.R. v. Platte County, 42 Mo. 171, or State *ex rel.* Lex. & St. L. R.R. v. Saline County, 45 Mo. 243. These were applications for writs of *mandamus* to compel the issuing of bonds. It was shown that the preliminary conditions had not been complied with, and the court refused to compel the exercise of the power. But this court in both cases has pointed out the line of distinction between such cases and those where the bonds had actually been issued and passed to innocent purchasers. In the latter class of cases the question ceases to be one of power, and becomes one of waiver of the question of power and of ratification and estoppel.

IV. The defendants were purchasers in good faith, without actual or constructive notice.

V. The act of March 21, 1868 (Sess. Acts 1868, p. 42), is curative of all irregularities in prior proceedings, and confers original power on County Courts to issue bonds in all cases for work done, whether an election was held or not. The act relates back, and operates as if it had been in force prior to the making of the contract and the issuing of the bonds. (Hann. & St. Jo. R.R. Co. v. Marion County, 36 Mo. 305 *et seq.*; Lee County v. Rogers, 7 Wall. 181; Gelpcke v. City of Dubuque, 1 Wall. 175 *et seq.*; Meyer v. City of Muscatine, 1 Wall. 384, and see 392 and authorities cited; Hull & Argalls v. County of Marshall, 12 Iowa, 142; Bridgeport v. Housatonic R.R. Co., 15 Conn. 475–81, 492–7, 500; Bissell v. Jeffersonville, 24 How. 293; City v. Lawson, 9 Wall. 485.)

(*a*) The acts of the General Assembly of 1865 and 1866

gave authority to the County Courts to pay money and issue bonds for road purposes, where " the amount of proposed expenditure had been submitted to a vote of the people." The only object of the act of March 21, 1868, could have been to authorize such issue in cases where no such election had been held. If this was not the object of the General Assembly, none can be perceived, and the law would be simply a repetition of a former enactment. It is not to be supposed that the Assembly enacted a law without purpose.

(b) It is a fact well known, and a matter of judicial history, that, until the decision of this court, made at its January term, 1868, in the case of Leavenworth & Des Moines R.R. v. Platte County (42 Mo. 175), it was generally considered by County Courts that the submission to a vote was a matter " optional with the courts," the language being; "may, for information, submit." In the case of City of St. Louis v. Alexander, 23 Mo. 510, the language was, "provided that the qualified voters," etc., " shall be in favor."

(c) The act of March 21, 1868, was passed about the time of the promulgation of the opinion in the Platte county case, and was designed to meet a large class of cases in which roads had been constructed and money expended by contractors in good faith, who but for this enactment would have been remediless. But immediately after the passage of this curative act (referring only to past transactions), the General Assembly, on the 23d of March, 1868 (Wagn. Stat., § 16, p. 1222.; Sess. Acts 1868, p. 152), re-enacted a general road law, in which the election clause, which had given rise to confusion and litigation, was so amended as to use the word " shall " instead of the word " may." It thus becomes apparent that the General Assembly, by the act of March 21, 1868, designed to cure the errors in past transactions, and immediately closed the door to all future errors by enacting a law couched in plain and unmistakable language.

(d) The curative act had to be general in its language, and without reference to any particular county ; any such reference would have made it special legislation, and therefore liable to constitutional objections.

VI. The respondents in this case desire an adjudication on the merits of the case, and therefore waived the technical question, which they might well raise, whether the Supreme Court cannot control the action of the County Court by injunction, and whether the collection of an illegal assessment cannot be enjoined. (Witt v. Owen, 42 Mo. 512; Sayre v. Tompkin, 23 Mo. 443; St. Louis v. Goode, 21 Mo. 216; State v. Parkville R.R. Co., 32 Mo. 496.)

WAGNER, Judge, delivered the opinion of the court.

This was a petition in the nature of a bill in equity, brought by the appellants, who are citizens and tax-payers of Franklin county, asking for a decree declaring a contract and certain orders of their County Court void, and requiring a cancellation and delivery of bonds issued under said contract, and for an injunction restraining their payment, sale or transfer, and restraining the assessment, levy or collection of a tax for the purpose of their payment.

The controversy springs out of a contract made by the County Court of Franklin county with Budd & Decker for the macadamizing and bridging of a certain road in that county from the town of Union, the county seat, to the west line of St. Louis county. The bonds received in payment of the work by the contractors were negotiable securities with coupons attached, and were mostly transferred before the institution of this suit.

There is nothing to show that the holders had any notice, or that any knowledge was brought home to them of any bad faith or infirmity in the contract previous to the time the bonds were negotiated and transferred. The persons owning these securities were made parties to this suit, and must be treated as *bona fide* and innocent purchasers. As the bonds were negotiated before maturity, what has been said in the argument as to the bad faith and dishonest conduct of the officers and contractors can have no weight against the defendants, who innocently invested their money, provided the authority to issue the bonds actually existed. The prevailing insanity of the people about running in debt and making expenditures for public improvements, the folly of county

officers, and the arrant knavery of contractors and speculators, are considerations which might have application in a proceeding to restrain the issue or negotiation of the bonds, but ought not to be allowed to authorize their repudiation when they have come into the possession of *bona fide* holders. The application on the part of the appellants would have come with a better grace and with more persuasive equity had they filed their bill at the commencement of the work, and not waited till its completion before they moved in the matter. They were citizens of the county, they knew of the contract, they saw the heavy expenditures that were being made, and the amount of improvement as it was executed; and still the proceeding was not instituted till the work was completed, and the bonds in payment were issued and nearly all negotiated. The bill, so far as it asks to enjoin the assessment, levy and collection of a tax for the purpose of paying the bonds, must be disregarded, as it is well settled that a bill in equity will not lie for such a purpose, the party having a complete remedy at law.

The two main questions to consider are whether the bonds were issued without authority, so as to be absolutely void, and whether, if such was the fact, they were rendered valid by subsequent authority and enactment. There were some minor matters presented, but they require no particular notice, as upon the two essential points above indicated the case must be decided.

The contract was originally made and the County Court proceeded under the authority of an act of the Legislature concerning roads and highways, approved February 16, 1865. The thirteenth section of the act declares that before any expenditures shall be made by County Courts for the purposes contemplated by the act, the County Courts may, for the purpose of information, submit the amount of the proposed expenditure to the voters (of the respective counties) at the next special or general election, and if a majority of the voters shall approve of such proposed appropriation, then the court may proceed and improve the roads as herein contemplated. If a majority shall vote against such appropriation, then nothing further shall be done therein within twelve months, and until another vote is taken as before set out,

and such new vote shall determine the matters as provided. (Sess. Acts 1865, p. 117.)

It is admitted that the question was not submitted to the voters of Franklin county, and that no election was had for the purpose of determining the matter. The court proceeded of its own motion, without consulting the people, and entirely ignored this provision of the law. As County Courts are only the agents of the county, with no powers except what are granted, defined and limited by law, like all other agents they must pursue their authority and act within the scope of their powers. (Wolcott v. Lawrence County, 26 Mo. 272; Ruggles v. Collier, 43 Mo. 353.)

In the case of The City and County of St. Louis v. Alexander, 23 Mo. 483, where the law required the County Court to submit to the qualified voters of the county the question of subscribing stock to a railroad, it was decided that it was necessary that the sense of the qualified voters should be taken as to the propriety of the subscription, and that it would be illegal for the court to subscribe without such previous submission. It is contended that it was not imperative with the County Court to submit the matter to a vote, but merely discretionary, as the language used is, " may for the purpose of information." But the preceding part of the sentence clearly negatives this construction, for it expressly provides that " before any expenditures shall be made by County Courts," etc., " they may, for information, submit the amount proposed to be expended to the voters ; and, if a majority vote against it, then nothing further shall be done within one year." As the tax-payers are the persons most deeply interested, it was obviously contemplated that they should be consulted as to the necessity, propriety and utility of the expenditure. It was not intended to vest in the County Court unlimited power over the property of the people of the entire county. A similar question to this arose and was decided by this court in the case of The Leavenworth & Des Moines R.R. Co. v. Platte County, 42 Mo. 171. The case depended upon the construction to be given to the act by which the company was chartered. One section in the act of incorporation gave the County Court a general power to subscribe stock, but by another section the power was expressly

limited and made subject to the provisions of the general railroad law then in force, which provided that the County Court " may, for information, cause an election to be held to ascertain the sense of the tax-payers " as to such subscription. No such election was directed or held. In the decision of the case the court held the following language: · " This [the election] was a necessary condition of the power to subscribe. That all the sections of an act are to be construed together is a well-settled rule of construction. The word ' may ' in this clause must be interpreted to mean ' shall.' It is a power given to public officers, and concerns the public interest and the rights of third persons, who have a claim *de jure* that the power shall be exercised in this manner, for the sake of justice and the public good." (Newberg Turnpike Co. v. Miller, 5 Johns. Ch. 113 ; Blake v. Portsmouth & Concord R.R. Co., 39 N. H. 435 ; Malcolm v. Rogers, 5 Cow. 193.) This principle is founded in justice, and was declared in an early day, that where the rights of third persons are involved, or the public good requires it, the word " may " will always be construed to mean " shall." In an old case the following ruling was had: " Indictments on 14 Char. II, ch. 12, against churchwardens and overseers, for not making a rate to reimburse the constables. Exception was taken that the statute only puts it in their power to do so by the word ' may,' etc., but does not require the doing of it as a duty, for the omission of which they are punishable. *Sed non allocatur ;* for where a statute directs the doing of a thing for the sake of justice or the public good, the word ' may ' is the same as the word ' shall ;' thus 23 Henry VI says the sheriff may take bail; this is construed he shall, for he is compellable to do so." (Rex v. Barlow, 2 Salk. 699 ; see also Cro. Jac. 134 ; Cro. Eliz. 655 ; 2 Inst. 118 ; Carth. 293 ; Skin. 370.)

I think, therefore, it is clear, both upon authority and principle, that the court did not act within the scope of its power, or pursue its authority in making the contract and issuing the bonds without submitting the proposition to take the sense of the voters.

But the point is further urged that, even if this be so, still the bonds are valid in the hands of innocent purchasers. It is quite certain that mere irregularities in the steps which led to the issu-

ance of bonds will not affect them in the hands of third persons who purchased without notice, providing the power to issue them actually existed. Recent decisions in some of the States have asserted a contrary doctrine, and have gone far toward impairing the value of these securities, but we are not disposed to follow them. And in New York, where the law required that the subscription could only be made and the bonds issued by obtaining the written assent of a certain number of resident tax-payers and filing it with the county clerk, it has been held as a prerequisite to a. recovery that the bondholder was bound to prove affirmatively that the written assent of the required number of resident tax-payers was in point of fact obtained and filed in the county clerk's office, and that the town was not bound by the representation of its officers, upon the face of the bonds, that such assent had been obtained and filed. (Starin v. Town of Genoa, 23 N. Y. 439 ; Gould v. Town of Sterling, *id.* 456. )

But the Supreme Court of the United States, in a series of adjudications, have established a different principle, and one which we believe is more in consonance with justice and reason. We have heretofore conformed our rulings on this subject with the decisions of the national court, not on account of its paramount authority — for on this question it has none —but because it inculcated an unbending principle of right and a rigorous morality. Whether any of the cases have gone sufficiently far to warrant the holding of these bonds binding and valid is now to be inquired into.

The leading case is The Commissioners of Knox County v. Aspinwall *et al.*, 21 How. 539. The Legislature of Indiana passed an act authorizing Knox county to subscribe for stock in the Ohio & Mississippi Railroad Company, on condition that a majority of the voters of the county decided in favor of such subscription at an election to be held for that purpose. An election was held, and a majority vote was cast for the subscription, and the board of commissioners made the subscription and issued and delivered bonds in payment thereof. These bonds were negotiated, and the holders brought suit to enforce the payment. The suit was resisted on the ground that there was a

want of authority to execute the bonds in question, because there was an omission to comply with the requirement of the statute in respect to the notices to be given. That the election was held and a majority vote obtained for the subscription was not denied, but it was alleged that the notices of election were irregular and defective.

But in answer to this the court decided that where the board subscribed for the stock and issued the bonds, purporting to act in compliance with the statute, it was too late to call in question the existence or regularity of the notices in the suit against them by the holders of the bonds, who were innocent holders, in this collateral way; that in such a suit, according to the true interpretation of the statute, the board were the proper judges whether or not a majority of the votes in the county had been cast in favor of the subscription to the stock; and that, as the bonds on their face comported with the law under which they were issued, the purchaser was not bound to look further for evidence of a compliance with the condition to the grant of power. But this judgment must be taken with reference to the facts in the case. In arriving at their conclusion the court say: "The case assumes that the requisite notices were not given at the election, and hence that the vote has not been in conformity with the law. This view would seem to be decisive against the authority on the part of the board to issue the bonds, were it not for a question that underlies it, and that is, who is to determine whether or not an election has been properly held and a majority of the votes of the county cast in favor of the subscription? Is it to be determined by the court in this collateral way, in every suit upon the bond or coupon attached, or by the board of commissioners as a duty imposed on it before making the subscription? The court is of opinion that the question belonged to this board. The act makes it the duty of the sheriff to give the notices of election for the day mentioned, and then declares that if a majority of the votes shall be given in favor of the subscription the county board shall subscribe the stock. *The right of the board to act in an execution of the authority is placed upon the fact that a majority of the votes had been cast in favor*

*of the subscription,* and to have acted without first ascertaining it would have been a clear violation of duty; and the ascertainment of the fact was necessarily left to the inquiry and judgment of the board itself, as no other tribunal was provided for the purpose. This board was one, from its organization and general duties, fit and competent to be the depository of the trust thus confided to it. The persons composing it were elected by the county, and it was already invested with the highest functions concerning its general police and fiscal interests.

" We do not say that the decision of the board would be conclusive in a direct proceeding to inquire into the facts previously to the execution of the power, and before the rights and interests of third parties had attached; but after the authority has been executed, the stock subscribed, and the bonds issued and in the hands of innocent holders, it would be too late, even in a direct proceeding, to call it in question; much less can it be called in question to the prejudice of a *bona fide* holder of the bonds in this collateral way."

In Bissell *et al.* v. The City of Jeffersonville, 24 How. 287, the common council of the city of Jeffersonville, in Indiana, had authority to subscribe for stock in a railroad company, and to issue bonds for such subscription, upon the petition of three-fourths of the legal voters of the city. Under one of these acts the common council determined that three-fourths had so petitioned, and under a subsequent act, authorizing them to revise the subject, they again came to the same conclusion, and issued the bonds. Duly certified copies of the proceedings of the common council were exhibited to the plaintiffs at the time they received the bonds, and upon the bonds themselves it was recited that three-fourths of the legal voters had petitioned for the subscription. The court held that jurisdiction of the subject-matter on the part of the common council was made to depend upon the question whether the petitioners, whose names were appended, constituted three-fourths of the legal voters of the city, and the common council were made by the laws of the tribunal to decide. that question; and therefore, when the city was sued upon the bonds by innocent holders for value, it was too late to introduce.

parol testimony to show that the petitioners did not constitute three-fourths of the legal voters of the city.

The doctrine of these cases was reasserted and enforced in Moran v. Commissioners of Miami County, 2 Black, 722. In Mercer County v. Hasket, 1 Wall. 83, the facts were these: By act of the Assembly, passed in 1852, the Legislature of Pennsylvania authorized the commissioners of Mercer county, in that State, to subscribe to the stock of the Pittsburg & Erie Railroad, which road, if built, would pass through their county and benefit it. The act, however, contained this proviso: *" Provided*, that the subscription shall be made subject to the following restrictions, limitations and conditions, and in no other manner or way whatever, viz: all such subscriptions shall be made by the county commissioners, and shall be made by them after, and not before, the amount of such subscription shall have been designated, advised, and recommended by a grand jury of said county." The grand jury only " recommended that the commissioners of Mercer county subscribe to the capital stock of the Pittsburg & Erie Railroad, to such an amount and under such restrictions as may be required by the act of the Assembly, by authorizing them to subscribe to an amount not exceeding $150,000." Under this recommendation the commissioners subscribed the stock and issued bonds. The bonds declared on their face that the faith, credit and property of the county were solemnly pledged under the authority of certain acts of Assembly, and that, in pursuance of said acts, the bonds were signed by the commissioners of the county. An attempt was made to defeat the payment of these bonds after they were passed to the hands of innocent purchasers, but the court rejected this defense. Mr. Justice Grier, speaking for the whole bench, said: "They are on their face complete and perfect, exhibiting no defect in form or substance, and the evidence offered is to show that the recitals on the bonds are not true; not that no law exists to authorize their issue, but that the bonds were not made in pursuance of the acts of Assembly authorizing them. We have decided, in the case of Commissioners of Knox County v. Aspinwall, that where the bonds on their face import a compliance with

the law under which they were issued, the purchaser is not bound to look further. The decision of the board of commissioners may not be conclusive in a direct proceeding to inquire into the facts before the rights and interests of other parties had attached, but after the authority had been executed, the stock subscribed, and the bonds issued and in the hands of innocent holders, it would be too late, even in a direct proceeding, to call it in question." (Van Hostrup v. Madison City, 1 Wall. 291 ; Meyer v. City of Muscatine, id. 385.) In Supervisors v. Schenck, 5 Wall. 772, the suit was brought upon certain bonds of Marshall county, Ill. The statute under which the bonds were issued gave the counties authority to purchase or subscribe for shares in railroad companies, subject to certain conditions or regulations, one of which was that a majority of the qualified voters of the county must first vote for such subscription or purchase. In 1851 the Legislature passed a statute called "the township organization law," which, after its adoption by the counties, transferred certain powers in reference to the counties to a board of supervisors instead of the County Court. Among these powers was a right to call an election for the purpose of ascertaining the sense of the voters in relation to a subscription for stock. On the 28th day of February, 1853, the County Court of Marshall county ordered an election to vote for and against a subscription. The election was held under that order, and a majority of the voters cast their ballots in favor of the subscription. Previous to the 28th day of February, 1853, the county had adopted the township organization statute, and was on that day so organized and acting. The board of supervisors, on the 14th of November, 1854, acting by authority of the election, made the subscription and issued bonds and coupons in payment thereof. The bonds were transferred for value, without any notice of want of authority to execute the same, and for nine years the board of supervisors annually levied and collected the necessary taxes and paid the interest on them. The only defense was that no election had ever been held by order of the board of supervisors. But the court were of the opinion, and so decided, that the levy of the tax and the payment of interest

by the proper county authorities validated the bonds in the hands of *bona fide* holders for value, though in their origin they were issued irregularly in virtue of a popular vote, ordered by the County Court instead of the board of supervisors, the vote and other proceedings having been in all respects, other than the source of the order, regular.

We will now briefly refer to a few of the decisions rendered by the court in this State, which mainly coincide with the views taken by the Supreme Court of the United States.

Flagg *et al.* v. The City of Palmyra, 33 Mo. 440, was an application for a *mandamus* to compel the city council of Palmyra to levy a tax to pay the annual interest on certain bonds which the city had issued to aid in the construction of the Quincy & Palmyra Railroad. The enabling act of the Legislature, under which a subscription was made, provided that before any such subscription should be made the city council should call an election of the qualified voters of the city, to vote for or against the making of such subscription, for the number of shares, to be specified in the notice of the election; said election to be held on the same notice, and the votes received, counted and returned in the same manner as in the case of election of the mayor and councilmen of the city; and if a majority of the qualified voters, voting at said election, should be in favor of the subscription, the same should be made by the city council, and the stock so subscribed for should be under the control of the city council in all respects as stock owned by individuals. In the return to the alternative writ it was not denied that an election was held, and that a majority voted for the subscription; but it was stated that no call and notice of an election was given, as required by law, and that the votes were not received, counted and returned by the city council, as required by the act. This return was traversed, and the court below found for the relator. In what the informality or irregularity in the proceedings consisted the report of the case does not inform us. But the vote which gave the city council jurisdiction is conceded. The judgment of the Circuit Court was affirmed, and the judge, in delivering the opinion of this court, said: "In this case, if the bonds have been issued by

the city of Palmyra in apparent compliance with the law, and themselves give us no evidence of·a want of performance of the prerequisites to their issuance, and no actual notice of any such defect is traced to the bondholders, we will not hold the bondholders to be affected by a failure of the officers of the city of Palmyra to perform all that was by the law required of them, in anticipation of and preparation for the issuing of these bonds. Being issued in apparent conformity to the law, the public (any of whom might acquire the bonds) is entitled to view them as issued in actual conformity to the law, and to suppose that all the acts required of the people and officers of the city of Palmyra, in reference to the bonds, have been duly performed."

This language is exceedingly broad; and if it is construed as applicable only to the facts in the case, it is sustained by numerous cases. But if it is intended to assert that a court or a city council, who have power under certain circumstances to make contracts and issue bonds, may disregard these circumstances or conditions entirely, and then issue bonds purporting to be in pursuance of authority which will be binding, and against which no defense can be made, we dissent from it.

In The Hann. & St. Jo. R.R. Co. v. Marion County, 36 Mo. 294, we held that where a county, acting under authority it supposed to be valid, subscribed to the stock of a railroad company in good faith, issued its coupon notes in payment of such subscription, and for a series of years voted the stock and paid its coupons, and such notes passed into the hands of innocent and *bona fide* purchasers, it was estopped from asserting that such notes were illegally issued. And to the same purport see Barrett v. Schuyler County, 44 Mo. 197.

The language used in the cases, that where the bonds on their face import a compliance with the law under which they were issued the purchaser is not bound to look further, must be taken as used with respect to the facts in those cases. By an examination it will be seen that on every one of them the qualified voters had voted to confer the authority, and that some mere irregularities had existed as to the manner of giving the notices or casting up the vote. These irregularities could not be expected, nor were

they necessary to be known to the purchasers. The only matter in which they were concerned was to know whether the power to issue the bonds existed. The taking and obtaining the majority vote in this case was the prerequisite — the essential thing which gave the investiture of authority and conferred jurisdiction. The court possessed no power except what it derived from law, and that was only to initiate the proceedings by which the power might be called forth. The real authority came from the voters at the polls. If they sanctioned the measures and authorized the expenditure, the court could then proceed and carry out their will, otherwise not. Till the votes were taken and a majority of them were cast in favor of the proposition, the court had no authority over the subject-matter, and their action was a total nullity. A record which imparts absolute verity may always be impeached for want of authority or jurisdiction in the court rendering it; and so may the acts of an agent who has acted without authority, where there has been no express or implied ratification by the principal.

In Gelpcke v. City of Dubuque, 1 Wall. 175, Justice Swayne says : "When a corporation has power under any circumstances to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any informality in the hands of such a holder than any other commercial paper."

These bonds are placed upon the footing of commercial paper, and that is giving them the highest characteristics of negotiable securities. But one who takes a negotiable promissory note or bill of exchange, purporting to be made by an agent, is bound to inquire as to the power of the agent. Where the agent is appointed and the power conferred, but the right to exercise the power has been made to depend upon the existence of facts of which the agent may naturally be supposed to be in an especial manner cognizant, the *bona fide* holder is protected because he is presumed to have taken the paper upon the faith of the representation of the agent as to those facts. But the holder has no such protection in regard to the existence of the power itself. It is precisely this principle that underlies all the decisions on this

question, giving this species of paper its firmest support. The holder has only to see that the power authorizing the issue of the bonds exists; but where the right to exercise the power depends upon certain facts, he may rely upon the representation as to the existence of those facts, because they are peculiarly within the cognizance of the agent issuing them. Therefore, where the voters have conferred the power by a vote, the requisite number of votes cast and the regularity of the election are all matters within the knowledge of the County Courts or city councils, and the purchasers may well rely upon the truth of their representations touching the premises. As no election was ever ordered and no vote taken in this case, the court had no jurisdiction whatever, and acted wholly without authority, and hence the bonds were void.

The next point of inquiry is whether the act of the Legislature approved March 21, 1868, cured the unauthorized action of the County Court and validated the new bonds issued. That act contains the following provisions:

"Section 1. In all cases where the County Courts have heretofore laid out, surveyed, and commenced the building and have built macadamized or other roads, or have thrown up embankments, built bridges and culverts, or other necessary work, in their respective counties, the County Courts are hereby authorized to borrow money on the credit of the county, and to issue the bonds of the county with coupons attached; but said bonds shall not be of a denomination of less than one hundred or more than one thousand dollars, and shall not run exceeding twenty years, nor bear interest at a higher rate than ten (10) per cent., for the purpose of paying for the work done and contracted for in their respective counties.

"Sec. 2. Said bonds may be made transferable in such manner as the County Court may direct; and the courts shall be authorized to levy a sufficient amount of revenue annually to pay the accruing interest on bonds authorized by this act; and for that purpose may, if it should be necessary, levy a special tax."

After the adoption of this last act the County Court took up the original bonds and issued others in lieu thereof. These

bonds purport upon their face to be issued "under and pursuant to an order of the County Court of said county, and by authority of an act of the General Assembly of the State of Missouri, approved March 21, 1868, entitled 'An act to authorize County Courts to issue bonds for the purpose of paying for the building of bridges and macadamized roads heretofore contracted for and built.'"

If the act imparts the requisite authority to issue the bonds for the purpose contemplated, I have no doubt about the power of the court to make the exchange in the mode pursued. That the act was framed and passed with a view to meet this very case is unquestionable. It is also true that curative and confirmatory acts are generally specific and particular. But in this State it could not be special without violating the constitutional provision prohibiting special enactments. Its generality, therefore, is not an insuperable objection, no other reason against it being shown. That the Legislature had the power is, in my opinion, beyond dispute. The case is not distinguishable from The Hann. & St. Jo. R.R. v. Marion County, 36 Mo. 294. In that case a subscription was made by the County Court under an act that was supposed to be invalid, and we held that a subsequent ratification of the subscription by the court, under an act authorizing the same, would make the contract binding although it had been originally void. The act simply confers the right to do a particular thing, and may be construed as an original power.

So it has been recently adjudged that where a debt was contracted by a city, which was void because not authorized by the statutory law of the State, it was made valid by a subsequent statute recognizing the validity of the debt as contracted. (The City v. Lawson, 9 Wall. 477.) This whole subject was recently examined at length by this court in the case of Barton County v. Walser, 47 Mo. 189, and it is unnecessary to repeat here the views therein offered. The counties are not full corporations in the absolute and unqualified sense of that term, but mere political subdivisions for governmental purposes; and the County Courts act under the direction of the statute, in such manner and according to such terms as may be prescribed by the Legislature. Such

being the case, it was within the undoubted province of the Legislature to grant the power and clothe the court with the authority to issue bonds in payment for the work.

The Circuit Court found for the defendants, and I think its judgment should be affirmed.

Affirmed. Judge Bliss concurs. Judge Currier not sitting.