JOHN L. DODGE, Respondent, *v.* THE COUNTY OF PLATTE, in the State of Missouri, Appellant.

The P. C. & F. D. M. R. R. Co. was incorporated by the legislature of Missouri in 1860; by its charter the County Court of any county through which the road was located, and any city or town, were authorized to subscribe for stock, and to issue bonds to pay therefor; by another section (§ 7) a provision is made for taking a vote of the taxable inhabitants of a strip of country on either side of the road, and if a majority vote in favor of a tax to pay for stock, it is made the duty of the court to levy and collect the tax. *Held*, that the charter gave no authority to the taxable inhabitants of a strip of country along the road to vote for the issue of bonds, or for an issue of bonds upon a vote in favor of subscribing for stock, but only authorized the levy and collection of a special tax to pay for stock.

A new Constitution was adopted by said State in 1865, which prohibited the general assembly from authorizing any county, city or town from becoming a stockholder in, or loaning its credit to any company, unless two-thirds of the qualified voters should assent thereto (art. 11, § 14), but it was provided (art. 11, § 3) that all statute laws then in force not inconsistent with the Constitution should continue in force. In 1868 an act was passed by the legislature of said State authorizing the subscription for stock of a railroad company upon a vote of two-thirds of the qualified voters, at an election for that purpose, in favor thereof, and an issue of bonds in payment. In July, 1869, in proceedings under the said charter, an election was ordered in a strip of land described as "part of the municipal township of Greene;" the election was held August 17, 1869, at C. P., in the district described, and a majority voting at the election voted in favor of a tax; this vote was subsequently declared by the County Court to be a nullity. In 1870 an act was passed amending the act of 1868; it contained a provision (§ 7) declaring that in all cases where by the provisions of the charter of any railroad company the "taxable inhabitants" of any portion of any municipal township had or might thereafter vote to take stock, they should have all the privileges conferred by the act of 1868 upon counties or townships, and the same power and duty was given and imposed upon the County Court to issue bonds, etc., to be paid, however, by tax upon the districts voting. Thereupon, and in 1871, the County Court of the county including said township of Greene granted an order reciting the election so held, and directing the issuing of county bonds; bonds were accordingly issued. In an action to recover the amount of certain coupons to said bonds, *held*, that the act of 1870 did not legalize the vote at such election; that said provision of the act, if it authorized the issue of bonds in such cases, was in contravention of the State Constitution; that the constitutional provision

continuing in force acts not inconsistent did not apply, as no law then existed authorizing the issue; that, therefore, the issuing of said bonds was unlawful, and the bonds were void.

*Smith* v. *Clark County* (54 Mo. 58), *State* v. *Greene County* (id. 540), distinguished.

The bonds recited that they were issued in pursuance of a vote of the taxable inhabitants at C. P., held August 17, 1869, and that for the payment thereof special taxes would be levied "on the real estate lying in the district voting at such election." *Held*, that the county was not estopped by the recitals from alleging the invalidity of the bonds; that said recitals did not import that the bonds were legally issued, but on the contrary, that they were issued without authority.

*Dodge* v. *County of Platte* (16 Hun, 285), reversed.

(Argued June 18, 1880 ; decided September 28, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 16 Hun, 285.)

· The nature of the action and the facts appear sufficiently in the opinion.

*Richard O'Gorman* for appellant. The rules of law and decisions of the State of New York must govern this case. (*Jewell* v. *Wright*, 30 N. Y. 260; *Dickinson* v. *Edwards*, 20 Alb. L. J. 347–8; Ct. of App., Sept. 16, 1879; *Granger* v. *Buffalo*, 6 Abb. N. C. 238–244; *Supervisors* v. *Galbraith*, 99 U. S. [9 Otto] 218; *Starin* v. *Genoa*, 23 N. Y. 439; *People* v. *Mead*, 24 id. 114; 36 id. 224; *Venice* v. *Woodruff*, 62 id. 465; *Halstead* v. *Mayor*, 3 id. 430; *Horton* v. *Thompson*, Ct. of App., Jan. 18, 1878; 17 Alb. L. J. 334; *Merchants' Bk.* v. *Coll*, 6 Bosw. 478.) Power in the County Court to issue bonds is no way included in or grows out of the power to levy a tax. (*Lynde* v. *County*, 16 Wall. 15.) It cannot be believed that the persons who issued the bonds were also the officers empowered to decide conclusively as to the legality of their own action. (*Gould* v. *Sterling*, 23 N. Y. 463–5; *People* v. *Mead*, 36 id. 224; *Lynde* v. *County*, 16 Wall. 15.) The recital in the bonds that they are issued in pursuance of an election, etc., does not of itself show, or tend to show, any power or authority on the part of the court to issue the bonds. (*Mat-*

*ter of Albany St.*, 11 Wend. 148; *Matter of John and Cherry Sts.*, 19 id. 659; *Taylor* v. *Porter*, 4 Hill, 140; 1 Abb. Dig., p. 661, § 188; id., p. 654, §§ 138–141; *Varick* v. *Smith*, 5 Paige, 137; *Cochran* v. *Van Sorley*, 20 Wend. 365; *Embury* v. *Connor*, 3 N. Y. 511.) If the plaintiff had no right of action at the commencement of the suit in July, 1874, consent given him by the real owner in 1876 could not cure the defect. (*McMahon* v. *Allen*, 12 How. Pr. 39; *McCullough* v. *Colby*, 4 Bosw. 603; *Hornfoger* v. *Hornfoger*, 6 How. Pr. 13.)

*William S. Opdyke* for respondent.    Defendant's prayer for affirmative relief, enjoining the plaintiff from prosecuting actions upon the bonds and coupons, operated as a waiver of any technical defense of this nature. (*Hanover Bk.* v. *Smith*, 13 Blatchf. 224.)    The plaintiff is a trustee of an express trust within the meaning of section 449 (formerly 113) of the Code. (*Considerant* v. *Brisbane*, 22 N. Y. 389; *Cummings* v. *Morris*, 25 id. 625; *City Bk.* v. *Perkins*, 29 id. 554; *Eaton* v. *Alger*, 47 id. 345; *Deval* v. *Barnes*, 7 Hun, 342; *Sheridan* v. *Mayor*, 68 N. Y. 30; *Hays* v. *Southgate*, 10 Hun, 511; *Brown* v. *Penfield*, 36 N. Y. 473; *Williams* v. *Brown*, 2 Keyes, 486; *Allen* v. *Brown*, 44 N. Y. 228; *Reilly* v. *Cook*, 13 Abb. 255; *Cromwell* v. *County of Sac*, 94 U. S. 351; Pomeroy's Remedial Rights, §§ 128–130.) No formal agreement is necessary to constitute an express trust in personal property. (*Gott* v. *Cook*, 7 Paige's Ch. 521; *Day* v. *Roth*, 18 N. Y. 448; *Grinnell* v. *Schmidt*, 2 Sandf. 706.) The power of the county defendant to make the bonds in suit and its obligation to pay them are to be determined under the laws and decisions of the State of Missouri, and not those of this State. (*Jessup* v. *Carnegie*, Ct. of App., 1880; *Hoyt* v. *Sheldon*, 3 Bosw. 302; *Hoyt* v. *Thompson*, 3 Sandf. 421; *Merrick* v. *Van Santvoord*, 34 N. Y. 212–19; *Hintermeister* v. *First Nat. Bank*, 64 id. 214; *Hunt* v. *Hunt*, 72 id. 236; Story on Confl. of Laws, §§ 556–8, 562–9.) Under the Missouri law it is necessary to prove merely constitutional authority to issue the bonds and actual issue by the proper officials. (Dillon on Law

of Municipal Bonds, § 22; Daniel on Neg. Inst., §§ 1537–1544; *Flagg* v. *City of Palmyra*, 33 Mo. 440; *Hannibal & St. Jo. R. R. Co.* v. *Marion Co.*, 36 id. 29±; *Barrett* v. *Schuyler Co.*, 44 id. 197; *Steines* v. *Franklin Co.*, 48 id. 167, 175, 179; *Neal* v. *Saline Co.*, id. 390; *Ranney* v. *Bader*, 50 id. 600; *Smith* v. *Clark Co.*, 48 id. 58, 76.) If the Missouri courts, since the negotiation of the bonds in question have reversed the rules then prevailing, still the bondholders can rightfully appeal to the former decisions as being the law as to these bonds. (*Smith* v. *Miller*, 50 Mo. 133; *Smith* v. *Clark Co.*, 54 id. 75; *State* v. *Sutterfield*, id. 391–397; *Gelpke* v. *City of Dubuque*, 1 Wall. 175; *Thomson* v. *Lee Co.*, 3 id. 327; *Alcott* v. *Supervisors*, 16 id. 678; *County of Moultrie* v. *Savings Bank*, 92 U. S. 631.) The coupons in suit are in the hands of holders for value and in good faith without notice. (*Steines* v. *Franklin Co.*, 48 Mo. 167.) Even if such beneficial owners had notice their title is protected by proof of the fact that it was acquired from the plaintiff holding the bonds *bona fide* and without notice. (*Williams* v. *Mason*, 12 Hun, 92, 108; *Cromwell* v. *Sac Co.*, 6 Otto, 51.) Both the Missouri and the Federal courts have decided that article 11, section 14 of the Constitution of the United States does not affect powers given under prior acts to give aid and credit to railroad companies and acts to amend such acts. (*State* v. *Macon Co.*, 41 Mo. 453; *R. R. Co.* v. *Nodaway Co.*, 47 id. 349; *R. R. Co.* v. *Sullivan Co.*, 51 id. 522; *Smith* v. *Clark Co.*, 54 id. 58–70–80; *State* v. *Greene Co.*, id. 540–550; *Cooper* v. *Sullivan Co.*, 65 id. 542; *Callaway Co.* v. *Foster*, 93 U. S. 567; *Scotland Co.* v. *Thomas*, 94 id. 682; *Henry Co.* v. *Nicolay*, 95 id. 619; *Schuyler Co.* v. *Thomas*, 98 id. 169; *State ex rel.* v. *Linn Co.*, 44 Mo. 504; *Ramsey* v. *Baeder*, 50 id. 600; *McPike* v. *Pen*, 51 id. 63; *State* v. *Cunningham*, id. 479; *Rubey* v. *Shain*, 54 id. 207; *State* v. *Bates Co.*, 57 id. 70; *State* v. *Clarkson*, 59 id. 149; *State* v. *Davies Co.*, 64 id. 31; *State* v. *Cooper Co.*, id. 170.) A municipal corporation authorized to contract a debt may borrow money to pay it and issue its negotiable bonds for its payment. (*Lynde* v. *County*, 16 Wall. 12; *Mills* v. *Gleason*, 11 Wis. 470; *Bank*

v. *Chilicothe*, 7 Ohio, 31; *Williamsport* v. *Commonwealth*, 84 Penn. St. 500; *Meyer* v. *Muscatine*, 1 Wall. 387; *Rogers* v. *Burlington*, 3 id. 654; *Kelly* v. *Mayor*, 4 Hill, 263.) In this case the issuing of the bonds having been ratified by the subsequent payment of the coupons, from funds realized by a special tax imposed upon the strip of country, a further estoppel arose in favor of the bondholders. (2 Daniel on Neg. Inst., §§ 1545–9; *Barrett* v. *Co. Court*, 44 Mo. 210; *H. & St. Jo. R. R. Co.* v. *Marion Co.*, 36 id. 294; *Steines* v. *Franklin Co.*, 48 id. 185.) The County Court in Missouri is both a judicial and an administrative body. (*State* v. *Cooper*, 17 Mo. 501–9; *St. Jo. & D. R. R.* v. *Buchanan Co.*, 39 id. 489; *Marion Co.* v. *Phillips*, 45 id. 79; *In re Saline Co.*, id. 52.) In issuing bonds in aid of public works, the County Court acts solely in an administrative capacity. (*Marion Co.* v. *Phillips*, 45 Mo. 79; *In re Saline Co.*, id. 52–55.) The validity of the legislative authority given to the defendant county is not affected by the fact that the strip of land was not a regular municipality. (*Soper* v. *Henry Co.*, 26 Iowa, 264; *Langhorne* v. *Robinson*, 2 Gratt. 661; *People* v. *Lawrence*, 41 N. Y. 137; Daniel on Neg. Inst., §§ 1519, 1556, 1558.) The plaintiff is entitled to a judgment against the county, although the bonds were issued on behalf of a township or a part of a township. (*West* v. *Trustees, etc.*, 16 N. Y. 161; *Conrad* v. *Trustees, etc.*, id. 158; *Lee* v. *Sandy Hill*, 40 id. 442; *Williams* v. *Dunkirk*, 3 Lans. 49; *Bath Co.* v. *Amy*, 13 Wall. 234; *Cass Co.* v. *Johnston*, 95 U. S. 360.) The county and its constituents having enjoyed the benefits must bear the burdens. (*Barlow* v. *Whitney Arms Co.*, 63 N. Y. 62; *R'way Co.* v. *McCarthy*, 6 Otto, 258.)

MILLER, J. The plaintiff claims to recover the amount of interest coupons attached to certain bonds issued by the defendant, and which were transferred to the plaintiff before maturity. The principal question presented is as to the validity of the bonds and coupons in the hands of a *bona fide* holder. Each of the bonds contains a recital that " it is issued in pur-

suance of an election held by the taxable inhabitants at Camden Point, on the 17th day of August, A. D. 1869, and for the payment of which and the interest thereof the County Court of said county shall, from time to time, levy and cause to be collected  *  *  *  a special tax, which shall be levied on the real estate lying within the district voting at such election." The right to issue the bonds in question depends upon the construction to be placed upon several acts passed by the legislature of the State of Missouri, as well as a provision of the Constitution of that State. By section 6 of an act incorporating The Platte City & Fort Des Moines Railroad Company (S. L. of Missouri of 1859 and 1860), it is made lawful for the County Court of any county, through which any portion of the route of the railroad may be located, to subscribe to the stock of the company and to issue bonds to pay for the stock thus subscribed. It is also provided that any city or town is authorized to subscribe for such stock and issue bonds to pay for the same. By section 7, upon the presentation of a petition of the president and directors, praying that a vote may be taken in any strip of country through which the road may pass, not to exceed ten miles on either side of said road, stating that the inhabitants are desirous of taking stock in said road and of voting upon themselves a tax for the payment of the same, it is made the duty of the County Court to order an election ; and if a majority of the taxable inhabitants determine in favor of the tax, it is made the duty of the court to levy and collect from them a special tax, to be paid over as collected to the treasurer of the company. After the passage of the act of 1860, and in 1865, the State of Missouri adopted a new Constitution, and it was declared by section 14 of article 11, that the general assembly should not authorize any county, city or town to become a stockholder in or to loan its credit to any company or association, unless two-thirds of the qualified voters of such county, city or town shall assent thereto. (1 Wagner's Mo. Stat. 62.) It was also provided by section 3 of article 11 that " all statute laws of this State now in force, not inconsistent with this Constitution, shall continue

in force until they shall expire by their own limitation, or be amended or repealed by the general assembly." (Id. 61.)

In 1868 (March 23) another act was passed by the legislature, which provided that whenever a certain number of resident tax payers in any municipal township should petition the County Court, setting forth their desire as a township to subscribe to the capital stock of any railroad company, etc., it should be the duty of the court to order an election to determine whether such subscription shall be made; and if two-thirds of the qualified voters voting at the election were in favor of such subscription, it should be the duty of the County Court to make such subscription, according to the terms and conditions thereof; and if such conditions provide for the issue of bonds in payment of such subscription, the court should issue bonds therefor, etc., and the same should be delivered to the railroad company.

In July, 1869, an application was made by the president and directors of the railroad company mentioned, asking for an election in a strip of country described as a part of the municipal township of Greene, and such election was ordered to take place on the 17th day of August, 1869, and was held accordingly, a majority voting in favor of the tax. The vote at such election was subsequently declared by the County Court to be a nullity and of no effect. This election was by virtue of section 7 of the act of 1860, and that provision gave no authority to the taxable inhabitants to vote for the issue of bonds, but only provided for a special tax, which was to be collected. But even if the election, which was by the inhabitants of a strip of land, and not by the qualified voters of a county, city or town, was in accordance with law, it was of no avail, for the reason that it was reversed and set aside, and no taxation or issue of bonds could, therefore, be based upon any such proceeding. It may, also, be remarked that the election which was held had no relation to the issue of bonds, as no vote was taken for any such purpose, and only related to the levy and collection of a special tax, to be paid as provided. The issue of bonds and the payment of the same, with inter-

est, in annual installments, is entirely a different thing from the mere levy and collection of a tax, and the two plans are inconsistent with each other. In this connection, it is well to notice that the provisions of section 7 are special, and the power conferred is distinguishable from that granted by section 6 of the same act. The former (§ 7) confers no authority upon the County Court to issue bonds, and such a power is impliedly denied by the provision relating to the levy and collection of a tax contained in the same. While section 6 authorizes any city or incorporated town to subscribe for stock and bonds to be issued, and the collection of a tax to pay interest and principal, it may be assumed, I think, that up to the time when the vote was taken and the proceedings in reference thereto were vacated, no power existed to issue the bonds in question, and no taxation was warranted to pay for bonds based upon such proceedings. Such being the state of the case, the question arises whether an authority was conferred by virtue of any subsequent legislation. It is claimed that such is the fact, upon the authority of the act of March 24, 1870, which amended the act of 1868, commonly known as the "Railroad Construction Act," by adding a section thereto, which is as follows : " Section 7. In all cases where by the provisions of the charter of any railroad company, organized under the laws of this State, the taxable inhabitants of a portion of a municipal township of any county in the State have voted, or may hereafter vote, to take stock in such railroad company, they are hereby declared entitled to and shall have all the privileges, rights and benefits in said act (act of 23d March, 1868) conferred upon counties or townships, and the County Court of such county shall exercise the same powers and perform the same duties in issuing bonds and levying, collecting and paying over the taxes which it is required to do in the cases of a county or township under the provisions of said act ; provided, however, that no part of such township, outside of the limits of the district voting, shall be taxed to pay any of the bonds or coupons so issued by the County Court." It is insisted by the respondent's counsel that after a vote by the taxable in-

habitants of any strip of country, or of any portion of a municipal township in the county, it became the duty of the county to issue its own bonds on account of the subscription thus made, and that the county was empowered and directed to protect itself against its liability upon such bonds by special taxes upon such strip of country.   We think that the amendment of 1870 did not legalize the vote which had been adjudged to be void by the County Court, or authorize the issue of the bonds in question.   The reasons for such a conclusion are quite obvious.   By the provisions contained in the act of 1868, already cited, if not less than two-thirds of the "qualified voters" were in favor of a subscription for stock, the County Court were to subscribe according to the conditions of the subscription.   They were either to subscribe for the stock absolutely, and direct a levy by tax to pay for the same, or to subscribe, and decide that bonds be issued in payment of the stock, if the conditions so provided, and issue such bonds, which were also to be paid by a tax.

No power was conferred by the act of 1868 upon any but "qualified voters" of the county or town to vote for the issue of bonds at any election; and as the Constitution of the State of Missouri, already cited, gave no power to issue county bonds unless "two-thirds of the qualified voters" assented thereto, the amendment of 1870, *supra* — passed after the adoption of the Constitution, which provides for the issue of county bonds when the "taxable inhabitants have voted, or may hereafter vote, to take stock"—was subject to its prohibition and a violation of that instrument.   The plaintiff, in his points, claims that the vote was not to be taken under the act of 1868, but under the charter of 1860; that the plaintiff has to refer to the same solely to explain the act of 1870, which authorizes a County Court to issue its bonds on behalf of the strip of land, and hence the validity of the act of 1868 may be assumed, so far as it affects the bonds in suit.   Be that as it may, it is not apparent upon what principle the legislature could authorize the issue of bonds upon the vote of "taxable inhabitants" instead of two-thirds of the qualified voters, with-

out violating the Constitution. Under the act of 1860 there was no power to issue county bonds on the vote of the " taxable inhabitants " of a district. The Constitution of 1865 prohibited such issue; and neither the act of 1868, or the act of 1870, could confer such power without a violation of the prohibition. The act of 1870 was inoperative so far as the railroad company was concerned, because it gave a power in derogation of the Constitution which it did not have before; and there was no law whatever authorizing the issue of bonds upon a vote of the taxable inhabitants.

The claim of the counsel for the plaintiff, that the Federal and Missouri courts have decided that the clause in the Constitution cited does not affect powers given under prior acts to give aid and credit to railroad companies, cannot control the case at bar, for it is manifest that the right to issue the bonds is not within the provisions of the act of 1860, and cannot be upheld upon any such ground.

It is also insisted that the Missouri courts have affirmed the validity of the act of 1868, and thus it has become the settled law of the State. An examination of the cases relied upon will evince that even if the constitutionality of such act has been generally upheld, the question now raised was not presented, and it is nowhere decided that the vote of the taxable inhabitants of a strip of land is equivalent to a vote of the qualified electors of a township — which is the point presented upon this appeal. In the opinion at General Term the cases of *Smith* v. *Clark Co.* (54 Mo. 58) and *State* v. *Greene Co.* (id. 540) are cited to sustain the position that corporations having a special charter when the new Constitution took effect, by which the County Court was authorized to subscribe without the vote of the people, were not affected by that instrument, and as applicable to the case at bar. We think that neither of these cases is directly in point, and that they do not bear upon the question. In the former (*Smith* v. *Clark Co.*), by the charter of the company, the bonds could be issued without the sanction of the popular vote ; and it was held, that a general act subsequently passed did not repeal the former and a special provision of the

charter.  In the latter case (*State* v. *Green Co.*), the charter of the company, granted before the adoption of the Constitution, authorized county courts to subscribe for railroad stock without a vote of the people ; and it was held, that the power conferred was not repealed by subsequent general laws, or by the subsequent adoption of the Constitution.  It was said in the opinion that if the act of 1868 substantially changes the character of the company, or attempts to confer upon county courts the power to make subscriptions without first submitting the question to the qualified voters, then, as to such matters, it was void.  No power existed in the County Court, before the Constitution of 1865 was adopted, either by special power or by general law, to authorize the issue of bonds to the railroad company by the election or vote of the " taxable inhabitants " of a strip of land or of a section of a county.  Nor, as we have seen, did such power exist by virtue of the act of 1870 ; for if the latter act conferred any such power, it would be in direct conflict with the Constitution.  The original charter authorized a subscription for stock, to be paid for by taxation, not by the issue of bonds, and the act of 1870, so far as it authorizes the issue of bonds in such cases (if it does so), gave a new right not authorized by the charter, and which is prohibited by the Constitution.  The provision of the Constitution of 1865, in article 11, to the effect that all laws, not inconsistent with that Constitution, should continue in force, does not aid the plaintiff, as no law was in operation, to which we have been referred, when the Constitution went into effect, which authorized the " taxable inhabitants " of a county, or of a portion thereof, to vote for the issue of county bonds in aid of a railroad corporation.  The act of 1860, incorporating the railway in question, does not confer such authority, as is erroneously supposed.  Section 7 of the act clearly intends that the stock shall be taken by the " taxable inhabitants " and paid for by means of a tax, which is antagonistic to the theory that the County Court was authorized, in any form, to take or subscribe for stock, or to issue bonds for the same.  The provision of section 6 which authorizes the County Court to subscribe for stock on behalf

of the county, and to invest its funds in the stock of the company and issue bonds to raise funds for the stock so subscribed, and that any incorporated town or city may thus subscribe and issue bonds, sustains the construction placed upon section 7, and evinces that a different rule was to apply in taking or subscribing for stock by the taxable inhabitants of a strip of land.

The provisions of the statutes which have been considered are somewhat intricate and confused; but giving full effect to each of them, it cannot be held, we think, that any legal authority existed for the issue of the bonds in question. The vote which had been taken had been declared by the tribunal, which was authorized to act upon it, as a nullity, and to restore and give it any effect by law, even if the power existed, the enactment should be clear, explicit and satisfactory. The statute conferred no authority upon the County Court to make the order to issue the bonds, and was without any force or validity, as we have seen.

Reliance is placed upon the recitals contained in the bonds, which, it is urged, import a compliance with the conditions imposed, and is conclusive against the municipality as to the facts recited or implied from the recitals, and estops it in an action brought by an innocent holder for value to show to the contrary. The rule is settled by the adjudications of this court, that to entitle a party to recover in an action upon bonds of the character of those in controversy, there must be affirmative extrinsic proof that all the preliminary conditions required to authorize the issue of such bonds have been complied with. (*Town of Venice* v. *Woodruff*, 62 N. Y. 465; *People* v. *Mead*, 24 id. 114; 36 id. 224; *Starin* v. *Town of Genoa*, 23 id. 439.) Assuming, however, that the decision of the courts of Missouri are to govern in reference to the construction to be placed upon the statutes of that State and of the Constitution, which is in accordance with the decisions of this court (*Hunt* v. *Hunt*, 72 N. Y. 236; *Jessup* v. *Carnegie*, 80 id. 441); we are of the opinion that the recital was not conclusive as to the validity of the bonds, but on the contrary, imported that they were issued without any authority whatever. At least it was

sufficient notice to put the plaintiff upon inquiry, not only as to the validity of the bonds, but as to whether the conditions of law had been complied with previous to their being issued. The statement on the bonds that they were issued " in pursuance of an election of taxable inhabitants," does not of itself show that they were lawfully issued; and inasmuch as there was no authority to issue county bonds under the circumstances existing, establishes that they were invalid and issued without any lawful authority. No law, as we have seen, existed at the time, which authorized a County Court to issue such bonds; and it could not be done except upon a vote of two-thirds of the qualified voters. The case here is far different from one where it appears from the face of the bond that a lawful condition has been complied with, which of itself exonerates a *bona fide* holder from looking behind the recital, except as to the legislative authority for the issue of the same. (*Commissioners* v. *Bolles,* 94 U. S. 104; *Town of Coloma* v. *Eaves,* 92 id. 484; *Steines* v. *Franklin County,* 48 Mo. 167; *State of Missouri* v. *Saline County Court,* id. 390; *Smith* v. *Clark County,* 54 id. 76; *Ranney* v. *Baeder,* 50 id. 600; *Flagg* v. *City of Palmyra,* 33 id. 444.)

We have carefully examined the cases cited by the learned counsel for the respondent to sustain the position contended for, and we are of the opinion that none of them cover a case where the recital on its face calls for an inquiry as to the authority to issue the bonds, as is the fact here. As the recital in the bonds did not show or tend to establish any power or authority to issue the same, the plaintiff cannot be regarded as a *bona fide* holder of the coupons for value without notice; for, as is evident, no presumption is to be indulged in favor of the validity of bonds issued under statutory authority, where the recital is such as to put the holder upon inquiry; and in this respect the plaintiff has no superior right to any other owner of such an instrument. It follows that the County Court had no authority to order the issue of the bonds, and the action upon the coupons cannot be maintained.

Some other questions are raised in the printed points of the

respondent's counsel, which have been carefully considered, but none of them present any sufficient ground for upholding the judgment, or require an extended examination.

It follows that the referee erred in his decision, and the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS, J., not voting, and DANFORTH and FINCH, JJ., absent at argument.

Judgment reversed.