## COQUARD *v.* CHARITON COUNTY.

*(Circuit Court, W. D. Missouri, W. D.* 1882 )

1. POWERS—WHEN CANNOT BE DELEGATED.

    Whenever trusts or discretionary powers are to be exercised, the exercise thereof cannot be delegated.

2. COUNTY INDEBTEDNESS—POWERS VESTED IN COUNTY COURTS.

    Where the legislature has intrusted the county courts and judges thereof with the settlement and compromise of the bonded indebtedness of their counties, they cannot divest themselves of these trusts and delegate them to another.

3. SAME—CANNOT BE DELEGATED.

    A county court has no power to enter into a contract with a citizen of the state, delegating to such citizen the power and authority to compromise the outstanding indebtedness of such county, and give to such citizen the exclusive right to deal with the bondholders of the bonds of such county as its agent in effecting such compromise.

*Fisher & Rowell* and *Botsford & Williams,* for plaintiff.

*Dobson & Bell,* for defendant.

KREKEL, D. J. Plaintiff, Coquard, a citizen of the state of Illinois, sues Chariton county, one of the counties of the state of Missouri, on the following contract:

" This agreement, made and entered into by and between the county of Chariton, in the state of Missouri, party of the first part, and Louis A. Coquard, of the city of St. Louis, party of the second part, witnesseth that for and in consideration of the services rendered and to be rendered by the party of the second part in and about the compromising the debt now outstanding of said

party of the first part, and in consideration that said party of the second part has agreed to use due diligence and his best endeavors in effecting such compromise for the space of one year from the date hereof, party of the first part agrees that party of the second part shall be its agent for the purpose of negotiating and effecting a compromise of its indebtedness for the said space of one year, and that for that time it will employ no other agent, and give party of the second part the exclusive right to deal with the bondholders of the bonds of said county as its agent in effecting such compromise; that party of the first part will refer all letters of inquiry or inquiries of any kind about said indebtedness, or in compromising the same, to party of the second part. Said party of the second part shall make no charges against said county for his services in effecting such compromise; but the party of the first part will pay party of the second part ninety-five (95) cents on the dollar of the principal and past-due interest for each of the bonds known as the Chillicothe and Brunswick issue of said county, delivered to party of the first part by party of the second part during said time, and eighty (80) cents on the dollar of the principal and past-due interest for each of the bonds known as the Missouri and Mississippi issue, delivered to party of the first part by party of the second part within said time, which payments are to be made in new 6 per cent. compromised bonds of said county, duly executed. And party of the second part shall have for his compensation the difference between the amount he can obtain said bonds for from the holders, and the amount above specified.

"J. B. Hyde, President Chariton County Court.

"L. A. Coquard.

"*October* 20, 1879."

The petition is in the usual form, the various counts setting out the particular debts compromised, claiming the several amounts to which plaintiff supposes he is entitled under the contract for his services. To this petition defendant, by its attorneys, files a demurrer, assigning, among other causes, want of power in the county court of Chariton county to make the contract. It appears that the legislature of the state of Missouri, in order to enable the indebted counties of the state to settle and compromise their bonded indebtedness, passed sundry acts having that object in view. It is claimed by the plaintiff that under one of these acts, namely, that of April 12, 1877, county courts of indebted counties have power to make the contract sued on. The act cited in its first section authorizes counties, townships, cities, and towns, through the county courts, either for the counties themselves or for any township, or by the proper authorities of cities or towns, to enter into contracts with any person or persons, corporations or associations, for the compromise, purchase, or redemption of all bonds and coupons; whether due or not due, including judgments, and provides for the issuing of new bonds to be used in such compromises. It is not claimed that the act in any of its

provisions gives direct authority to county courts to employ agents to effect the compromises authorized, but the argument is that under this law, when viewed in connection with the acts of 1875 and 1879 upon the same subject, such authority may be inferred. Moreover, it is contended that from the nature of the business to be transacted, and the unsuitableness of the county courts themselves to attend to it, it is reasonable to suppose the employment of agents was contemplated, and hence the law should be so construed as to allow it. On looking into the act of 1875 it is found that the governor of the state is authorized to appoint a general municipal agent, who is empowered to receive propositions from the indebted municipalities regarding the terms upon which they will settle, and to ascertain from the bondholders upon what terms they will accept new bonds. The fifth section of the act provides for a vote by the people of the indebted county on compromises, and authorizes the county court to appoint an agent, who is to report to the general state agent the terms upon which it is proposed to settle.

The acts of 1879 are enlargements of former acts on the subject of compromises, and no agencies are therein provided for except in the county and township act of May the 16th, which directs the treasurers to be appointed as agents for a specified purpose. The various acts cited, and all laws bearing upon the subject under consideration, must be read in connection with the forty-eighth section of the fourth article of the present constitution of Missouri, if we attempt to arrive at and be guided by legislative intent. That section, among other things, prohibits the legislature from passing any act authorizing counties or municipalities passing any claims "under an agreement or contract made without express authority of law," and declares such unauthorized agreements or contracts as null and void. The county courts of Missouri are charged with the control and management of county property, the assessment, levying, and collection of taxes, laying out roads and keeping them in repair, and the transaction of county business generally. It is not denied that the county court may employ agents when required in performance of the duties imposed on them under the law. Nothing can be gathered, however, from the laws referred to, nor the general scope of the legislation of Missouri, indicating that county courts have power to divest themselves of any of the trusts imposed on them for a definite or indefinite time, and that is really the question here. Could the judges of the county court of Chariton county make a contract by which they divested themselves of the power to compromise the bonded indebtedness of the county, and delegate that power for the time of one year

to the plaintiff? It may be taken as well-established law that whenever trusts or discretionary powers are to be exercised, the exercise thereof cannot be delegated. *In re Quong Woo,* 13 FED. REP. 229; Dill. Mun. Corp. § 61; 43 Mo. 352; 48 Mo. 167; 61 Mo. 237, 282.

The judges of the county court of Chariton county, in common with other county courts of the state, were selected by the voters under provisions of law. The legislature of Missouri has intrusted to these courts and the judges thereof the settlement and compromise of the bonded indebtedness of their counties. The county court of Chariton county, by the contract sued on, undertook to divest themselves of these high trusts, and delegate them to the plaintiff. This cannot be done without express authority of law. Public policy would seem to be equally adverse to the entering into of such a contract as the one under consideration. The county court thereby deprived itself of the means of making favorable settlement and compromises should opportunities occur, placing all such chances in the hands of a person who, on his part, assumes no responsibility whatever, but making it his interest to depress the credit of the county to the injury of the people thereof, that he, and not the county, may profit thereby. When such contracts are made by individuals, and the law is invoked, courts will look with a critical eye at them, and allow no fruits to be reaped therefrom except by compulsion, as it were. Parties will not be permitted to take advantage of such contracts when the interest of the public is concerned. It is unnecessary to speak of the opportunities for fraud such contracts afford, for the county court of Chariton county is not charged with any intentional wrong, nor is the defendant such a manipulator of public securities as could seriously affect the market value of Chariton county bonds to his advantage. Both for want of power in the county court to make the contract under consideration, as well as on the ground of public policy, it is held that the plaintiff has no cause of action on the instrument in suit. The demurrer to the petition is therefore sustained.

Judge McCRARY concurs.