## OGDEN v. COUNTY OF DAVIESS.

1. An act of the General Assembly of Missouri, approved Jan. 4, 1860, authorizes counties, towns, and cities to subscribe to the stock of a railroad company which it incorporated, and issue bonds in payment therefor. The seventh section enacts that "upon the presentation of a petition of the president and directors of said company to the county court of any county through which said road may be located, praying that a vote may be taken in any strip of country through which it may pass, not to exceed ten miles on either side of said road; that the inhabitants thereof are desirous of taking stock in said road and of voting upon themselves a tax for the payment of the same, — it shall be the duty of said county court to order an election therein, and shall prescribe the time, place, and manner of holding said election; and if a majority of the taxable inhabitants shall determine in favor of the tax, it shall be the duty of said court to levy and collect from them a special tax, which shall be kept separate from all other funds and appropriated to no other purposes, and as fast as collected shall cause the same to be paid to the treasurer of said com-

pany." *Held,* that the affirmative vote of the inhabitants of such a strip authorized the county court to levy, collect, and pay over to the treasurer of the company such special tax, but it did not create a debt of the county, as such, for which bonds might be issued under that act or the act of March 24, 1868, authorizing " counties, cities, and incorporated towns to fund their respective debts."

2. The act of March 24, 1870, entitled " An Act to amend an act to facilitate the construction of railroads in the State of Missouri, approved March 23, 1868," granted no new power of subscription. The act of 1868 related entirely to municipal townships as such.

3. The court reaffirms its former rulings that the holder of a municipal bond is chargeable with notice of the statutory provisions under which it was issued.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Joseph E. Merryman* for the plaintiff in error.

*Mr. Willard P. Hall, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

On the 4th of January, 1860, the General Assembly of Missouri incorporated the Platte City and Des Moines Railroad Company, now, by statutory change of name, the Chicago and Southwestern Railway Company. Sect. 7 of the charter is as follows : —

" SECT. 7. Upon the presentation of a petition of the president and directors of said company to the county court of any county through which said road may be located, praying that a vote may be taken in any strip of country through which it may pass, not to exceed ten miles on either side of said road ; that the inhabitants thereof are desirous of taking stock in said road and of voting upon themselves a tax for the payment of the same, — it shall be the duty of said county court to order an election therein, and shall prescribe the time, place, and manner of holding said election ; and if a majority of the taxable inhabitants shall determine in favor of the tax, it shall be the duty of said court to levy and collect from them a special tax, which shall be kept separate from all other funds and appropriated to no other purposes, and as fast as collected shall cause the same to be paid to the treasurer of said company."

On the 4th of July, 1865, a new constitution of Missouri went into effect, sect. 14, art. 11, of which is as follows : —

"The General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

By an act to facilitate the construction of railroads, passed March 23, 1868, municipal townships in any county of Missouri were authorized to subscribe, through the county court of the county, to the stock of railroad companies, with the assent of two-thirds of the qualified voters of the township, and to pay their subscriptions with bonds in the name of the county, payable out of a special tax to be levied on the real estate of the township. On the 24th of March, 1870, the General Assembly amended this law by adding the following as sect. 7 : —

"In all cases where, by the provisions of the charter of any railroad company organized under the laws of this State, the taxable inhabitants of a portion of a municipal township of any county in this State have voted, or may hereafter vote, to take stock in such railroad company, they are hereby declared entitled to, and shall have, all the privileges, rights, and benefits in said act conferred upon counties or townships, and the county court of such county shall exercise the same powers and perform the same duties in issuing bonds, levying, collecting, and paying over the taxes which it is required to in the case of a county or township under the provisions of said act : *Provided, however*, that no part of such township outside the limits of the district voting shall be taxed to pay any of the bonds or coupons so issued by the county court. This act shall take effect from its passage."

After the passage of this act, the Daviess County Court, on the petition of the Chicago and Southwestern Railway Company, ordered an election on the twenty-first day of June, 1870, to obtain the assent of the "taxable inhabitants living within a strip of five miles on each side of the line of said railway to be built through the county of Daviess, . . . to the

subscription by the county of Daviess, for and on behalf of the taxable inhabitants of said strip, of the sum of $60,000 of the capital stock of said railway company, on such terms and conditions as " the court " should deem proper." Thereupon the court fixed, as one of the conditions of the subscription, that " in payment of said subscription sixty bonds shall be issued by said county to the Chicago and Southwestern Railway Company, . . . of $1,000 each, payable ten years after date, with interest at the rate of eight per cent per annum, evidenced by semi-annual coupons," &c. The election was held, and resulted in five hundred and sixty-eight votes for the subscription and four hundred against it. The county court subscribed the stock, and to pay the subscription issued and delivered to the company bonds in the following form : —

" UNITED STATES OF AMERICA.

" $1,000.]      *State of Missouri, County of Daviess.*      [$1,000.

" Daviess County Ten-year Bond, No. 3.

" Know all men by these presents, that the county of Daviess, in the State of Missouri, acknowledges itself to owe and be indebted to, and promises to pay the bearer the sum of one thousand dollars, on the first day of August, in the year of our Lord one thousand eight hundred and eighty, for value received, negotiable and payable without defalcation or discount at the Metropolitan National Bank, in the city and State of New York, with interest thereon from the first day of August, A. D. 1870, at the rate of eight per centum per annum until paid, which interest shall be due and payable semi-annually on the first day of February and August in each year, on the presentation of the proper interest coupon, as annexed hereto, attested by the signature of William M. Bostaph, clerk at the said Metropolitan National Bank. This is one of sixty bonds of like date, amount, and effect, numbered from one to sixty, both numbers inclusive, issued in payment of the indebtedness of said county of Daviess to the Chicago and Southwestern Railway Company, incurred on account of an election held in said county on the twenty-first day of June, A. D. 1870, by certain taxable inhabitants of said county.

" In testimony whereof, the said county of Daviess, by order of its county court, has caused these presents to be executed by the signature of the presiding justice of said court, attested by the

clerk thereof, with the seal of said county affixed, at office in Gallatin, Daviess County, Missouri, this twenty-seventh day of July, A. D. 1870.

"PETER BEAR, *Presiding Justice.*

"Attest: WILLIAM M. BOSTAPH, *Clerk.*"

{ SEAL OF DAVIESS }
{ COUNTY COURT, Mo. }

The coupon is in words and figures following, to wit: —

" $40.]                    'GALLATIN, Mo., July 27, 1870.

" County of Daviess, in the State of Missouri, will pay to the bearer forty dollars on the first day of February, 1873, at the Metropolitan National Bank, in the city and State of New York, for value received, being the semi-annual interest due on bond No. 3 of said county, issued to Chicago and Southwestern Railway Company.

" WILLIAM M. BOSTAPH, *Clerk.*"

When the delivery of the bonds was made, the interest coupons were cancelled to Sept. 1, 1871. The coupons for 1873 were not paid, and this suit was brought to recover what was due on that account. The plaintiff is a *bona fide* holder of the coupons. On the trial the judges of the Circuit Court were divided in opinion on several questions which have been certified here, the principal of which is whether there was lawful authority for the issue of the bonds. The presiding judge being of the opinion that there was not, judgment was given in favor of the county, and to reverse that judgment this writ of error was brought.

We think the presiding judge was right in the view he took of the controlling question in this case. Without doubt, sect. 7. of the charter of the company authorized the taxable inhabitants of the " strip of country " designated to vote a tax upon themselves to take stock, and required the county court to levy and collect such a tax, if voted, and pay over the money as fast as collected to the treasurer of the company; but in this we find no authority for the county to issue bonds in anticipation of the tax. The taxable inhabitants of the strip of country could not themselves make a bond, and all the county court could do was to collect and pay over the tax they

voted. The inhabitants were not even organized by themselves, much less made a body politic for any purpose. They could vote the tax, if called upon to do so by the county court, but that was all. The effect of their vote was nothing more than to authorize the county court to levy, collect, and pay over to the treasurer of the company the special tax they had determined upon. The requirement of the law — that the money, when collected, should be paid over to the treasurer of the company — is entirely inconsistent with any idea that the obligations to be met in this way were to be in the form of negotiable paper afloat on the market as commercial securities. Under the provisions of sect. 6 of the charter, counties, towns, and cities were expressly authorized to issue bonds in payment of their subscriptions. The omission of any such power in sect. 7 is conclusive evidence that nothing of the kind was intended in case of " strip " subscriptions. In this particular the case is even stronger than that of *Wells* v. *Supervisors, supra*, p. 625.

Neither did the act of March 24, 1870, give the power to issue bonds. That was an act amending what is commonly known as the " township aid law " of Missouri, which related only to subscriptions by municipal townships. The amendment granted no new power of subscription, but simply provided that where, under the charter of any railroad company, the taxable inhabitants of a portion of a municipal township had voted or might vote to take stock in the company, the county court might issue bonds for the stock so taken, to be paid out of taxes levied on property within the limits of the district voting. In the charter of the Chicago and Southwestern Company, authority was not given the taxable inhabitants of any portion of a township to take stock, but to the taxable inhabitants of any strip of country through which the road might pass, not exceeding ten miles on either side. This strip was not necessarily part of a township. It might include parts of several townships, or the whole of some and parts of others. As the act amended related entirely to municipal townships as such, and there had before been legislation in relation to strips of country without any reference to townships, it must be presumed that the amendment applied only

to parts of townships separately, and not to the aggregation of townships or parts of townships which would almost necessarily be included in a strip of country twenty miles wide or less along a railroad as it runs through a county. The bonds which this statute authorizes were to be issued on behalf of a portion of a township, not on behalf of a "strip of country." Under the charter, the taxable inhabitants of the strip were to take the stock, and they were to be taxed. We cannot, without a perversion of language, apply the act of 1870 to this provision of this charter. It follows that neither in the charter nor in the amending act relied on can there be found authority to issue the bonds in question.

On the 24th of March, 1868, the General Assembly of Missouri passed an act "to enable counties, cities, and incorporated towns to fund their respective debts." Sect. 1 of that act is as follows : —

"That the various counties of this State be, and they are hereby, authorized to fund any and all debts they may owe, and for that purpose may issue bonds bearing interest at not more than ten per centum per annum, payable semi-annually, with interest coupons attached; and all counties, cities, or towns in this State which have or shall hereafter subscribe to the capital stock of any railroad company, may in payment of such subscription issue bonds bearing interest at not more than ten per centum per annum, payable semi-annually, with interest coupons attached. The bonds authorized by this act shall be payable not more than twenty years from date thereof."

It is claimed that authority for the issue of the bonds can be found in this law. We do not agree to this. Neither the county, nor a city, nor a town took the stock now in question. The county did not owe any debt. The taxable inhabitants of the "strip of country" had authority to vote to tax themselves for the stock. In this way they could bind themselves; but that did not create a debt of the county, as such, for which funding bonds might be issued. The debt, if any, was of the "strip" only, and not the county. As no bond could be issued under the original vote, the county assumed no obligation whatever. The county court and other officers of the county could be compelled to levy, collect, and pay over the

tax, but that was all the county or its officers were required to do.

We have always held that every holder of a municipal bond is chargeable with notice of the provisions of the law by which the issue of his bond was authorized. If there was no law for the issue there can be no valid bond. On the face of these bonds it appears that they were issued to the Chicago and Southwestern Company on account of an election held by "certain taxable inhabitants of the county." This clearly connects the bonds with the Chicago and Southwestern charter, and indicates unmistakably that they were put out on account of a "strip" subscription. The holder is, therefore, chargeable with notice of the want of legal authority for their issue.

The principal question certified is answered in the negative, and, without specially replying to the others, further than may be implied from this opinion, the judgment is

*Affirmed.*