### DELAND v. PLATTE COUNTY.

(Circuit Court, W. D. Missouri, St. Joseph Division. November 5, 1890.)

1. COUNTY RAILWAY AID BONDS—AUTHORITY TO ISSUE.

   Act Gen. Assem. Mo. Jan. 4, 1860, incorporating the Platte City & Des Moines Railroad Company, and providing in section 7, that if a majority of the taxable inhabitants of any strip of country through which the road may pass vote upon themselves a tax in payment of their subscription to stock in the road, at an election ordered by the county court, the court shall levy a special tax, and cause the same, as fast as collected, to be paid to the treasurer of the company, does not authorize the county court to order the issue of county bonds in behalf of the taxable inhabitants of any strip of country which is a portion of a township in payment of such subscriptions. Ogden v. County of Daviess, 102 U. S. 634, followed.

2. SAME.

   Act Mo. March 23, 1868, authorizing the county courts to make subscription to railroad stock, and issue bonds therefor on behalf of municipal townships, relates to municipal townships as such, and does not authorize the issue of bonds on behalf of a strip of country which is only a portion of a township. Ogden v. County of Daviess, 102 U. S. 634, followed.

3. SAME—RETROSPECTIVE LAWS.

   The amendment of March 24, 1870, to Act Mo. March 23, 1868, providing that when, by the provision of a railroad charter, the taxable inhabitants of a portion of a municipal township "have voted," or may hereafter vote,

to take stock, etc., the county court shall exercise the same power and perform the same duties in issuing bonds as in the case of a county or township, as to a vote by the inhabitants of a portion of a township had prior to the passage of the amendment, falls within the inhibition of Const. Mo. art. 1, § 28, declaring that "no * * *, law retrospective in its operation can be passed." And this act is not relieved of its retrospective character by Const. Mo. 1865, art. 4, § 27, and 1875, art. 4, § 53, excepting the state from the prohibition against legalizing by local or special laws the unauthorized or invalid acts of any officer or agent of the state or of any county or municipal authority.

**4. SAME—RECITALS OF RECORDS.** .

The requirements of a railroad charter that "a majority of the taxable inhabitants" of a strip through which the road may pass may vote to tax themselves in payment of subscriptions to stock in the road is not satisfied by a record of the county court levying such tax that "the taxable inhabitants aforesaid voted," etc., without other recital or finding that a majority voted in favor.

**5. SAME—RECITALS—ESTOPPEL.**

A county railway aid bond reciting that it was issued "in pursuance of an election by the taxable inhabitants of Camden Point," does not estop the county, when the act authorizing the election in a part of a township lying between designated points, Camden Point being the voting place therein, required the assent of the majority of the taxable inhabitants.

At Law. Action by Frederick N. Deland against the county of Platte to recover upon a county bond. Judgment for defendant.

Statement by PHILIPS, District Judge.

A jury having been waived on stipulation of parties, this case was submitted to the court, and from the record evidence and stipulations of counsel the court makes the following special finding of facts:

#### Stipulations.

"It is hereby stipulated and mutually agreed upon by the parties to this case, by and through their attorneys, Sanders & Bowers, for the plaintiff, and John W. Coots for the defendant, that this cause be submitted to the court for trial without the intervention of a jury, a jury being specially waived by the parties to this case.

"That the certified copy of the records of the county court of Platte county in reference to the calling of the election, the vote held, and the issuing of the bonds and coupons in controversy in this case, signed and certified to. under the seal of the court, by Jesse J. Blakeley, county clerk, at his office in Platte City, Mo., February 15, A. D. 1888, and hereto annexed, is a true copy of the records of the defendant, the county of Platte, in all of its acts of record in reference to the preliminary steps as to the election, and the issue of the bonds and coupons in controversy in this case, and the subsequent payment of interest for a time thereon. .

"That the copies in the petition of the bonds and coupons involved in this case are true and correct copies of said bonds and coupons; and that the signature of the officials purporting to sign the same are the genuine signatures of T. W. Park, then clerk, and T. H. Talbott, then presiding justice, of the county of Platte, Missouri.

"That the statement hereto attached of the bonds and coupons involved in this case is correct, and the amount due the plaintiff (if anything) April 10, 1890, is $15,800, and his reasonable costs of suit.

　　　　　　　　　　　　　　　"Sanders & Bowers, for plaintiff.
　　　　　　　　　　　　　　　"W. P. Hall, for defendant."

Copy of records, Platte county, Mo., with reference to notice of election and issue of bonds of Platte county, Mo.:

　　　　　　　　　　　　　　　"Saturday, July 10th, 1869.

"Be it remembered, that at the term of the county court, held at Platte City, Platte county, Missouri, on Saturday, the 10th day of July, 1869, there were

present as follows, to wit: Hon. T. H. Talbott, president, Hons. Jacob Hamm and Benj. R. Morton, justices, of said court; Geo. W. Belt, sheriff; and Daniel P. Lewis, clerk." Book H, p. 206.

"Adjourned Term, 1869.

"State of Missouri, county of Platte—ss.: In the county court of said county, on the 10th day of July, 1869, the following, among other, proceedings were had, viz.:

"Now, at this time come the president and directors of the Chicago and Southwestern Railway Company, and present their petition, which is in the words and figures following, to wit:

" 'To the Honorable, the County Court of Platte County, Missouri: The undersigned, president and directors of the Chicago and Southwestern Railway Company, a corporation organized under a special law of the state of Missouri, entitled "An act to incorporate the Platte City and Fort Des Moines Railroad Company," approved January 4th, 1860, and by certain other acts of the general assembly of the state of Missouri amendatory thereof, respectfully make and present to your honors this, their petition, praying the court, under the seventh section of said act, that a vote may be taken in a strip of country through which said railway may pass, hereinafter mentioned and described, the same not exceeding ten miles on either side of said road. That the inhabitants thereof are desirous of taking fifty thousand dollars of the stock in the said railway company, and of voting upon themselves a tax for the payment of the same, which said strip is as follows:

" 'All that part of the municipal township of Greene, lying and being east of the range line, between thirty-four and thirty-five; and the said railway company hereby agrees that said tax shall never be collected or paid, unless said railway is located and constructed so as to run within one mile of the town of Camden Point.

" 'Respectfully submitted,

F. H. Winston,
" 'President.

" 'C. A. Perry,
" 'James N. Burns,
" 'James L. Davis,
" 'H. Edgerton,
" 'H. M. Allen,
" 'Benjamin Bonifant,
" 'N. P. Ogden,
" 'A. L. Perrin,
" 'Directors.'

"And the county court, being fully advised in the premises, orders and adjudges that the prayer be granted. And it is further ordered that an election in said strip be, and the same is hereby, ordered to be held at Camden Point, in Greene township, in Platte county, Missouri, on Tuesday, August 17th, 1869, and the manner of holding said election shall be as follows: All the taxable inhabitants of said territory above described shall be entitled to vote by ballot, on which shall be written or printed the words or figures, 'In favor of and assenting to the tax to secure the location and construction of the Chicago and Southwestern Railway through the strip of land mentioned in petition,' or, 'Opposed to and dissenting from the tax to secure the location and construction of the Chicago and Southwestern Railway through the strip of land mentioned in the petition.' And said first-mentioned ballots shall be deemed and counted in favor of the tax, and said last-mentioned ballots shall be deemed and counted against such tax. It is further ordered that Elliott Miller, James S. Owens, and Miles Harrington be, and they are, appointed, judges of said election, to hold and make return thereof, according to law. And the sheriff is ordered to give notice thereof according to law." Book H, p. 244.

"Monday, September 27th, 1869.

"Court meets pursuant to adjournment. Present, Hon. T. H. Talbott, president; Honorables Jacob Hamm and Benjamin Morton, justices; George W. Belt, sheriff; Daniel P. Lewis, clerk.

"And the following, among the proceedings, were had, to wit:

"In the matter of the election held at Camden Point, on the 17th day of August, 1869, in pursuance of an order of this court, made on the 10th day of July, 1869, and the returns of the poll books and ballots, and the certificates of the judges and clerks of said election.

"Now, at this day came William H. Thomas and W. Stitt, and file their motion to declare the vote taken at said election a nullity and of noneffect."

"Be it remembered, that at an adjourned term of the county court held at Platte City, Mo., on the 4th day of October, A. D. 1869, there were present as follows, to wit: Hon. T. H. Talbott, president, Hon. Jacob Hamm and Benjamin R. Morton, justices, of said court; George W. Belt, sheriff; Daniel P. Lewis, clerk." Book H, p. 250.

"And in said court the following, among other, proceedings were had, to wit:

"In the matter of the election held at Camden Point, in Greene township, on the 17th day of August, 1869, in relation to the subscription of $50,000 to the Chicago and Southwestern Railway Company.

"Now, at this day come the petitioners for said election, as well as Wm. H. Thomas and Wm. E. Stitt, by their respective attorneys, and the motion of said Thomas and Stitt, filed to herein do declare the said election a nullity and of noneffect, being taken up and argued, the same is sustained by the court. It is therefore considered by the court that the vote taken at Camden Point, on the 17th day of August, 1869, in pursuance of an order of this court, made on the 10th day of July, 1869, be and the same is declared a nullity and of noneffect. And it is further ordered and considered by the court that the said petitioners for said election pay the costs of this proceeding, and that execution issue therefor." Book H, p. 474.

"Be it remembered, that at an adjourned term of the term of the county court, held at Platte City, Mo., on the 3rd day of October, 1870, there were present as follows, to wit: Hon. Thomas H. Talbott, presiding justice of said court; Hon. Jacob Hamm, justice of said court; George W. Belt, sheriff; Daniel P. Lewis, clerk, by Ira Norris, deputy.

"And in said court the following, among other, proceedings were had, to wit:

"In the matter of the subscription of the taxpayers of a 'strip in Greene township,' made in July, 1869, to the Chicago and Southwestern Railway Company, the motion of the issuance of the bonds by the court is now here submitted to the court, which motion is taken under advisement until Wednesday, the 5th day of October, instant." Book H, p. 476.

"And on Wednesday, the 5th day of October, the following, among other, proceedings were had, to wit:

"Court met pursuant to adjournment. Present, Hon. T. H. Talbott and Hon. Jacob Hamm and Benj. R. Morton, justices of said court; George W. Belt, sheriff; and Daniel P. Lewis, clerk.

"In the matter of the motion made to this court on the third day of October, instant, for the issuance of the bonds of the county for the amount of the subscription made by the taxpayers within a 'strip in Greene township,' in the month of August, 1869, to the Chicago and Southwestern Railway Company, it is now here ordered that this cause be continued to the next term of this court."

"Be it remembered, that at an adjourned term of the county court held at Platte City, Mo., on the 14th day of November, 1870, there were present as follows, to wit: Present, Hon. T. H. Talbott, president, Hon. Jacob Hamm and Benj. R. Morton, justices, of said court; George W. Belt, sheriff; and Daniel P. Lewis, clerk." Book H, p. 496.

"At said court the following, among other, proceedings were had, to wit:

"In the matter of the motion of Joseph E. Merryman, made to this court on the third day of October, 1870, for the issuance of the bonds of the county for the amount of the subscription made by the taxpayers within a 'strip in Greene township,' in the month of August, 1869, to the Chicago and Southwestern Railway Company, it is now here ordered by the court that the motion aforesaid be and the same is overruled by the court." Book H, pp. 592, 593.

"Be it remembered, that at an adjourned term of the county court of Platte county, held on the 14th day of February, 1871, there were present as

follows, to wit: Hon. T. H. Talbott, presiding justice; Hon. John S. Brassfield and Jacob Hamm, justices; George W. Belt, sheriff; and T. W. Park, clerk.

"And in said court the following, among other, proceedings were had, to wit:

"Whereas, the court, on the 10th day of July, A. D. 1869, made an order submitting to a vote of the taxable inhabitants of the 'strip of territory in Platte county' hereinafter mentioned and described a proposition to subscribe for fifty thousand dollars of the capital stock of the Chicago and Southwestern Railway Company; and whereas, at an election held at Camden Point, in said strip, on the 17th day of August, 1869, by virtue of the provisions of an act to incorporate the Platte and Fort Des Moines Railroad Company, approved January 4, 1860, the taxable inhabitants aforesaid voted in favor of such subscription; and whereas, by an act of the general assembly of the state of Missouri, entitled 'An act to amend an act entitled "An act to facilitate the construction of the railroads in the state of Missouri,"' approved March 23, 1868, approved March 24, 1870, the court was authorized to issue bonds in payment of such subscription; and whereas, in consideration of the order and vote above recited, said railway company has located, constructed, and completed its railway through said strip of territory, and erected and completed a depot therefor within one mile of the town of Camden Point: Therefore, it is ordered by the court that fifty bonds of the county, each for one thousand dollars, be issued and delivered to said railway company, dated October 4, 1870, which bonds shall be executed by the presiding justice and the clerk hereof, attested by the seal of the court, due twenty years after date, at the American Exchange National Bank, in the city of New York, with forty semiannual coupons, each for fifty dollars, for interest accruing thereon, executed and payable in like manner as said bonds. It is further expressly ordered and provided that the subscription bonds and coupons aforesaid are made and executed for and in behalf of the taxable inhabitants of all that part of the municipal township of Greene, in said county, lying east of the range line between thirty-four and thirty-five. And the said bonds and coupons shall be paid by the taxable inhabitants exclusively, as provided by law, and none thereof shall ever be a charge on the county of Platte. And it is further ordered that the said Chicago and Southwestern Railway Company shall pay all expenses necessary for the transfering of the funds to New York, to pay the interest and bonds aforesaid. And the said company shall pay the expenses of the execution of the bonds, and all costs attending the same." Book H, p. 594.

"Be it remembered, that at an adjourned term of the county court of Platte county, Missouri, there were present as follows, on Friday, the 17th day of February, 1871: Hon. John S. Brassfield and Jacob Hamm, justices; George W. Belt, sheriff; T. W. Park, clerk.

"At which said court, among others, the following proceedings were had, to wit:

"Now, here comes T. W. Park, clerk, and files the receipt of James N. Burns, vice president of the Chicago and Southwestern Railway Company, for fifty bonds issued in accordance with an order made by this court, on the 14th day of February, 1871." Book H, p. 668.

"Be it remembered, that at an adjourned term of the county court held at Platte City, Platte county, Missouri, on Wednesday, June 14th, 1871, there were present as follows, to wit: Hon. T. H. Talbott, president; Hons. John S. Brassfield and Jacob Hamm, justices; George W. Belt, sheriff; and T. W. Park, clerk.

"At which said court the following, among other, proceedings were had, to wit:

"Ordered by the court, that the state and county tax be levied on the roadbed, ties, iron track, and buildings of the Chicago and Southwestern Railway Company, for the use and benefit of the strip of country, in Greene township, in Platte county,—that wherein the inhabitants voted a subscription of fifty thousand dollars to said railway company; and when said state and county taxes shall be collected, the same shall be applied to the payment, in the name of Platte county, for said strip, and which said strip is bound to pay.

And it is further ordered, that said property be and the same is valued at the sum of two hundred dollars and fifty thousand dollars, and that a copy of this order be certified to the collector, and to the proper officer of said company. And it is further ordered, that the levy be fixed at the same rate as is now fixed for the state and county purposes." Book H, p. 791.

"Be it remembered, that at an adjourned term of the county court of Platte county, Missouri, held at Platte City, Mo., on Monday, March 18th, 1872, there were present as follows, to wit: Hon. J. H. Talbott, president; Hons. Jacob Hamm and John S. Brassfield, justices; T. W. Park, clerk; and Geo. W. Belt, sheriff.

"At which court the following, among other, proceedings were had, to wit:

"In the matter of the subscription made by the taxpayers in the strip in Greene township, under an order of the county court, made on the 10th day of July, A. D. 1869.

"Ordered by the court, that the sum of twenty-five hundred dollars realized out of and by virtue of an order made on the 14th day of June, 1871, be and the same is hereby ordered to be transferred to the American Exchange National Bank, in the city of New York, to pay the interest falling due on said bonds on the first day of April next, and that J. E. Merryman be appointed agent to settle the matter, and report to this court at the May term; it being understood that the payment is made under the law in relation to subscription of township, passed 24th March, A. D. 1870." Book H, p. 847.

"Be it remembered, that at an adjourned term of the county court of Platte county, held at Platte City, Mo., on Tuesday, the 4th day of June, A. D. 1872, there were present as follows, to wit: Hon. T. H. Talbott, president; and Hons. Jacob Hamm and John S. Brassfield, justices; T. W. Park, clerk; and George W. Belt, sheriff.

"At which court, among others, the following proceedings were had, to wit:

"Ordered, that a tax of one half of one per cent. be levied upon every one hundred dollars valuation of the real and personal property in the strip of territory voting a subscription of bonds to the Chicago and Southwestern Railroad, for the purpose of paying the interest on said bonds, and that the clerk extend the same upon the tax books for 1872, in appropriate columns." Book L, p. 57.

"Be it remembered, that at an adjourned term of the county court of Platte county, held at Platte City, Mo., Monday, February 10th, 1873, there were present as follows: Hon. John S. Brassfield, president; Hons. Jacob Hamm and William E. Cunningham, justices; T. W. Park, clerk; and E. McD. Coffey, sheriff.

"At which said court the following, among other, proceedings were had, to wit:

"Ordered by the court that the payment of coupon No. 1 on bonds of Greene township to the Chicago and Southwestern Railway Company be, and the same is hereby, refused."

"Be it remembered, that at an adjourned term of the county court of Platte county, held at Platte City, Mo., on Monday, the 3rd day of March, 1873, there were present as follows, to wit: Hon. John S. Brassfield, president; Hons. Jacob Hamm and William E. Cunningham, justices; T. W. Park, clerk; and E. McD. Coffey, sheriff." Record L, pp. 84, 85.

"At which said court, among others, the following proceedings were had, to wit:

"It is hereby ordered that Stephen C. Woodson, county attorney, be and he is hereby required to take such action as may be necessary to collect the taxes paid into the state treasury by the Chicago and Southwestern Railway Company, assessed in said county of Platte for the year 1872, and pay the same into the county treasury, to the credit of the 'Greene Township Strip Fund,' and to this end the said attorney is authorized to proceed at once to Jefferson City, and make demand for said money, and he is also authorized to sign and receipt for, and in the name of Platte county, for any amount that may be paid him, in accordance with the above order." Book L, p. 86.

"Be it remembered, that at an adjourned term of the county court of Platte county, Mo., held at Platte City, on Monday, the 24th day of March, 1873,

there were present as follows, to wit: Hon. John S. Brassfield, president; Hons. Jacob Hamm and Wm. E. Cunningham, justices; T. W. Park, clerk; and E. McD. Coffey, sheriff.

"At which said court the following, among other, proceedings were had, to wit:

"Now comes James N. Burns, and files motion to instruct the county treasurer to forward to New York a sufficient sum of money to pay the interest falling due April 1st, 1873, upon the bonds of Greene township to the Chicago and Southwestern Railroad Company, which motion is continued, and set for hearing to-morrow." Book L, pp. 89, 90.

"And on Tuesday, the 25th day of March, the following, among other, proceedings were had, and entered of record, to wit:

"In the matter of the motion of James N. Burns, and the issue of bonds to the Chicago and Southwestern Railway Company by Platte county, for and on account of the taxpayers within the strip of country on both sides of the road in Greene township, it is ordered by the court, no member dissenting, that the treasurer of Platte county at once forward to the American Exchange National Bank, in the city of New York, the sum of twenty-five hundred dollars, to meet the interest falling due on said bonds on the first day of April next, and credit the fund paid in on account of the tax of said railway company, and now in his hands, belonging to said strip or collected from the Chicago, Rock Island and Pacific Railway Company, in Platte county, for the year 1872."

"State of Missouri, county of Platte—ss.: I, Jesse J. Blakeley, clerk of the county court, within and for the county and state aforesaid, do hereby certify that the foregoing is a full, true, and complete transcript of the proceedings in regard to the matter known as the issuance of the 'Greene Township Strip Bonds,' as full as the same appears of record in my office. [Seal.]

"In testimony whereof, I have hereunto set my hand, and affixed the seal of said court. Done at office in Platte City, Mo., this, the 15th day of February, A. D. 1888. Jesse J. Blakeley, County Clerk."

The following is a copy of the bonds issued on said subscription:

"Know all men by these presents, that the county of Platte, in the state of Missouri, acknowledges itself to owe and to be indebted to and promises to pay to bearer the sum of one thousand dollars, on the first day of October, one thousand eight hundred and ninety, for value received, at the National Exchange Bank, in the city and state of New York, with interest thereon from the first day of October, A. D. 1871, at the rate of ten per centum until paid, which interest shall be due and payable semiannually on the first days of April and October each year, on the presentation of the proper interest coupon, as annexed hereto, at the said American Exchange Bank. This is one of fifty bonds, of like date, amount, and effect, numbered from one to fifty, both numbers inclusive, issued in pursuance of an election by the taxable inhabitants of Camden Point, on the 17th day of August, A. D. 1869, and for the payment of which, and the interest thereon, the county court of said county shall, from time to time, levy and cause to be collected, in the same manner as county tax, a special tax, which shall be levied on the real estate lying within the district so voting at said election."

The coupons are in the following form:

"Platte City, Mo., October 4, 1870. $50.

"The county of Platte, in the state of Missouri, promises to pay bearer fifty dollars, for value received, at the American Exchange National Bank, in the city of New York, on the 1st day of April, A. D. 1880, being semiannual interest on bond No. ——, issued to the Chicago & Southwestern Railway Company."

Sanders & Bowers, for plaintiff.
J. W. Coots and Hall & Pike, for defendant.

PHILIPS, District Judge, (after stating the facts.) The bonds in question are predicated of section 7 of an act of the general assembly of the state of Missouri, approved 4th January, 1860,

incorporating the Platte City & Des Moines Railroad Company, which section is as follows:

"Upon the presentation of a petition of the president and directors of said company to the county court of any county through which said road may be located, praying that a vote may be taken in any strip of country through which it may pass, not to exceed ten miles on either side of said road, that the inhabitants thereof are desirous of taking stock in said road, and of voting upon themselves a tax for the payment of the same, it shall be the duty of said county court to order an election therein, and shall prescribe the time, place, and manner of holding said election; and if a majority of the taxable inhabitants shall determine in favor of the tax, it shall be the duty of said court to levy and collect from them a special tax, which shall be kept separate from other funds, and appropriated to no other purposes, and as fast as collected shall cause the same to be paid to the treasurer of said company."

It is the settled law of this jurisdiction that the holder of municipal bonds is chargeable with notice of the provisions of the law authorizing their issue. If there was no law authorizing the issue of the bonds, the bonds are void; and a purchaser of such instruments is bound to see to it that there is some law consistent with the recitations of the bond pursuant to which it was issued. The bond in question recites that it was issued "in pursuance of an election by the taxable inhabitants of Camden Point, on the 17th day of August, 1869, and for the payment of which and the interest thereon the county court of said county shall from time to time levy and cause to be collected, in the same manner as county tax, a special tax, which shall be levied on the real estate lying within the district so voting at such election." This recital, of course, referred the purchaser to the records and law authorizing the issue of this paper; and the plaintiff has pleaded the acts of the legislature and the action of the county court aforesaid as the basis of his right of action.

It has been expressly decided in Ogden v. County of Daviess, 102 U. S. 634, that said section 7 of the charter of the railroad did not authorize the county court of Platte county to issue bonds for the payment of any subscription voted by the inhabitants of the "strip" of country. The court say:

"The inhabitants were not even organized by themselves, much less made a body politic, for any purpose. They could vote the tax, if called upon to do so by the county court; but that was all. The effect of their vote was nothing more than to authorize the county court to levy, collect, and pay over to the treasurer of the company the special tax they had determined upon. The requirement of the law that the money, when collected, should be paid over to the treasurer of the company, is entirely inconsistent with any idea that the obligations to be met in this way were to be in the form of negotiable paper afloat on the market as commercial securities. Under the provisions of section 6 of the charter, counties, towns, and cities were expressly authorized to issue bonds in payment of their subscriptions. The omission of any such power in section 7 is conclusive evidence that nothing of the kind was intended in case of 'strip' subscriptions. In this particular, the case is even stronger than that of Wells v. Supervisors, Id. 625."

Clearly, therefore, unless these bonds can be referred to some other law for their vindication, this action must fail. Counsel for complainant rely upon two acts of the legislature,—one adopted

March 23, 1868, entitled "An act to facilitate the construction of railroads in the state of Missouri." This act authorized the county court to make subscription to the capital stock of railroads, and issue bonds therefor on behalf of any municipal township of a county, when petitioned therefor, and after an election to be held in the said township, at which two thirds of the qualified voters should vote for such subscriptions. It was also expressly held in Ogden v. County of Daviess, supra, that this act related entirely to municipal townships, as such, and was no authority for issuing bonds on a subscription voted by a mere strip of country, or for any less subdivision of a county than the municipal townships as they existed under the political subdivisions in our state government. But plaintiff contends that by an amendatory act of the statute last aforesaid, approved March 24, 1870, the issue of the bonds was authorized. This amendment is as follows:

"In all cases where, by the provisions of the charter of any railroad company organized under the laws of this state, the taxable inhabitants of a portion of a municipal township of any county in this state have voted, or may hereafter vote, to take stock in such railroad company, they are hereby declared entitled to and shall have all the privileges, rights, and benefits in said act conferred upon counties or townships, and the county court of such county shall exercise the same powers and perform the same duties in issuing bonds, levying, collecting, and paying over the taxes, which it is required to do in the case of a county or township under the provisions of said act: provided, however, that no part of said township, outside the limits of the district voting, shall be taxed to pay any of the bonds or coupons so issued by the county court. This act shall take effect from its passage."

It will be observed that this provision relates to the instance of a vote already had, as well as to one that might thereafter be taken; and it is the retroactive feature of this provision that plaintiff invokes and relies upon. For it must be kept in mind that the subscription voted by the taxpayers of the strip was at an election held in 1869, and prior to the adoption of this amendatory statute of March 24, 1870. The contention of plaintiff is that said election was held in "a portion of a municipal township," and it is sought in argument to construe the decision in Ogden v. County of Daviess so as to give authority for this post mortem legislation. The chief justice, arguendo, does say:

"It must be presumed that the amendment applied only to parts of townships, separately, and not to the aggregation of townships or parts of townships, which must necessarily be included in a strip of country twenty miles wide, or less, along a railroad as it runs through a country. The bonds which this statute authorizes were to be issued on behalf of a portion of a township, not on behalf of a 'strip of country.'"

It is to be observed, however, that, while the court is reciting what the statutory amendment authorized, it does not say that this statute would authorize the issue of bonds after an election held under the charter of the railroad in question. For the learned chief justice instantly proceeds to state:

"Under the charter the taxable inhabitants of the strip were to take the stock, and they were to be taxed. We cannot, without a perversion of language, apply the act of 1870 to this provision of this statute."

Counsel for plaintiff asserts the proposition that this amendatory act of 1870 should be applied in this case as if it were a part of the act of 1868, and in existence at the time of the election held in the strip in 1869; and contends that the legislature could ratify and affirm the exercise of any power by a municipal corporation which it could originally confer; and we are referred to the following authorities in support thereof: Anderson v. Township of Santa Anna, 116 U. S. 356, 6 Sup. Ct. Rep. 413; Bolles v. Brimfield, 120 U. S. 759, 7 Sup. Ct. Rep. 736; Jonesboro City v. Cairo, etc., R. Co., 110 U. S. 192, 4 Sup. Ct. Rep. 67. These are cases arising on legislative acts in the state of Illinois, in which the principle is announced that, "unless there be a constitutional inhibition, a legislature has power, when it interferes with no vested right, to enact retrospective statutes to validate invalid contracts, or to ratify and confirm any act it might have lawfully authorized in the first instance." That such statutes enacted subsequent to the occurrence of the act sought to be cured may obtain in some states whose constitutions do not interdict retrospective legislation, may be conceded to the plaintiff. But the constitution of the state of Missouri, (section 28, art. 1, of the declaration of rights,) in force at the time of the issue of these bonds, declares that, "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed." The constitution of the state of Illinois contains no such provision as the latter part of the foregoing clause. Under the constitution of Missouri, no law retrospective in its operation can be passed.

What is a retrospective law? "This word," says Bouvier, "is usually applied to those acts of the legislature which are made to operate upon some subject, contract, or crime which existed before the passage of the act; and they are, therefore, called 'retrospective laws.'" "A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability, in respect to transactions of considerations already past, is to be deemed retrospective or retroactive." Sedg. St. Const. Law, (2d Ed.) 160. This provision of the Missouri constitution has been construed and applied by the state supreme court, and is entitled to respect, and should be followed where a right, in pari materia, again comes under review. In Fowler v. City of St. Joseph, 37 Mo. 228, certain work was done for the city under an ordinance which provided for the collection of the bills by suit at law. After this work was done, the city, by a subsequent amendatory ordinance, provided that the cost of such improvement should be enforced by a special tax, levy, and sale. Under this amendatory ordinance the city proceeded by levy and seizure of property to collect the claim. The court held that when the contract was made and the work done the law in force did not make the amount apportioned to each property owner a lien on the property, but only created a personal liability, enforceable at law; it was therefore not competent by subsequent ordinance to create such lien, and provide for a different mode of collecting it, because it was retroactive in its operation. In Insurance Co. v. Flynn, 38 Mo. 483, the

legislature undertook by an amendment to the charter of the company to make the certificates signed by the president and secretary, attested by the corporate seal, that the party therein named is indebted to the company in the sum named, conclusive evidence of the fact, and made it retroactive as to the causes of action originating anterior thereto. The court, after quoting the text above cited from Sedgwick, said:

"The right of the legislature to change the remedy and prescribe rules of evidence, if its enactment does not create a new obligation, or attach a new disability retrospectively, is conceded: but it is not within the constitutional competency of the legislature to annul by statute any legal ground on which a previous action is founded, or to create a new bar by which such action may be defeated. No new ground for the support of an existing action ought to be created by legislative enactment, nor any legal bar which goes to deprive a party of his defense."

The case of City of St. Louis v. Clements, 52 Mo. 133, is still more pertinent. The city charter authorized the construction of sewers, the dimensions of which were to be prescribed by ordinance of the council. The ordinance passed left the determination of this matter to the city engineer. This was held to be an unauthorized delegation of legislative discretion, and, therefore, no liability under the contract was created against the city. Subsequently the state legislature passed an act authorizing the city to reassess the sum unpaid to the adjacent real estate benefited by the improvement. This act was held to be unconstitutional, for the reason that it was retroactive in its operation. The court, after quoting from Sedgwick that it is competent for the legislature in given cases to enact laws having a retroactive effect, unless it comes within the purview of some express prohibition contained in the state constitution, say:

"Here is a positive prohibition against the passage of any law which is retrospective in its operation. There is nothing left for construction: we are only left to ascertain what is defined to be a retrospective law, and if the law under consideration comes within the definition, the constitution pronounces the judgment."

After stating the definition given above by Sedgwick, and showing that no legal liability was created against the city, unless by virtue of the after legislative enactment, the court further say:

"How, then, can we say that this act does not create a new right in favor of the contractor, and incur a new liability on the part of the defendant? * * * To my mind this law comes exactly within the definition to be given to a retrospective law."

Two of these decisions were made prior to the issue of the bonds in question, and the other almost contemporaneously with the issuance. So that the construction placed on this clause of the state constitution was established before the bonds went into market. If the act of March 24, 1870, at least, in so far as it undertook to authorize the county court to issue bonds upon a vote "of a portion of a municipal township," theretofore taken, is not retrospective legislation, it would be difficult to conceive of an act falling within the inhibition of the constitution. At the time the vote was taken by the inhabitants of the strip of country, there was no law, say the supreme court in Ogden v. County of Daviess, supra, authorizing the

county court of Platte county to issue such bonds predicated of such election. When this subsequent legislation, therefore, is resorted to as authority for their validity, it can only be made to apply by giving to it a retroactive effect, and the constitution says this cannot be done.

Section 7 of the charter of the railroad company, under which the election was held in 1869, did not contemplate the issue of bonds in payment of the debt thus voted. What the taxpayers voted for was that the county court might "levy and collect from them a special tax" to raise the requisite fund to liquidate the debt. They never did vote for the issue of bonds. There was no law in being at the time of the election authorizing or empowering the issue of bonds for such purpose.

As said by Judge Dillon in Gause v. City of Clarksville, 5 Dill. 172:

"There is an obvious and essential difference in incurring a debt, to be paid in the usual manner out of the revenue of the corporation derived from taxation, and the raising of money in advance by a pledge of credit, and the issue of coupon bonds payable at a long distant day, for sale in the market of the country. The bonds may be issued, and sold for sixty-seven per cent. of their par value, and the corporation is bound."

The issue of the bonds in question materially altered the condition and right of the taxpayers from what they were at the time of making the contract for which they voted. The bonds issued bear 10 per cent. interest, payable semiannually at the city of New York, and are not payable until 1890, nearly 20 years after their issue. By this act of the county court the bonds were not redeemable, however much the taxpayers may have desired to take them up, for 20 years. They must during all these years pay interest thereon semiannually at the rate of 10 per cent. If this did not make a new contract, create a new liability for the debtors, after their vote, and in despite of what they voted for, common sense is at fault. The taxpayers of the so-called "strip" can well say to the demand of these bondholders: "In hoc foedere non veni."

Attention is directed by counsel for plaintiff to section 27, art. 4, of the constitution of 1865, which declares that "the general assembly shall not pass any local or special law, legalizing, except as against the state, the unauthorized or invalid acts of any officer," and also to the enlargement of this provision in the constitution of 1875, (section 53, art. 4,) which declares that "the general assembly shall not pass any local or special law legalizing the unauthorized acts of any officer or agent of the state, or of any county or municipal authority." It may be conceded that the above provision in the constitution of 1865 does not cover the case at bar, and that the constitution of 1875 is prospective in this respect. But these provisions detract naught from the other positive prohibition against retrospective legislation. These additional limitations but illustrate the fact that it was the purpose of the framers of the fundamental law, by particularization, to throw every possible safeguard around the constituency against post mortem legislation; and as far as possible, by going into details, to prevent both legislative and judicial departments from construing away the plain and obvious scope of other more general declarations. It remains just as true to-day, as it ha

since the adoption of the constitution of 1820, that no retroactive law can be passed by the legislature, which "creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." And the provision of said section 53 in the constitution of 1875 has not added one atom of strength to the prohibition. It but emphasizes the popular view of the state policy.

The case of Lynde v. County of Winnebago, 16 Wall. 6, which it is not too much to say carried the doctrine of implied power and agency to the utmost verge, is no authority for the action of the defendant county in issuing these bonds. In that case the power to borrow money to meet the tax voted did exist, under certain conditions. And the argument of the majority opinion proceeds upon the presumption that it could not reasonably have been within the contemplation of the legislature, or the county court, that, in providing for a necessary courthouse, "the erection should be delayed until a sum sufficient to pay for the structure had been realized from the tax authorized to be imposed, or that the work should proceed only pari passu with the progress of its collection from year to year." . Whereas, as already shown, the act of the legislature of 1860 conferred no authority to borrow the money to meet the subscription under any circumstances; and it could not have been in the contemplation of the voters in 1869 that bonds should be issued without authority of law. Nor was the county undertaking to build the road, so as to raise any implication that it must have been within the intendment of the taxpayers, or of the county court, that the money was to be borrowed to instantly prosecute the work. The railroad company was to build the road, and the taxpayers of the strip merely voted, under section 7, to take stock in said road, and voted "upon themselves a tax for the payment of the same." To that "special tax," levied and collected by the court, "to be paid to the treasurer of said company," "as fast as collected," could the company alone look for the payment of such subscription. The case of Dodge v. County of Platte, 82 N. Y. 218, bears out with additional force of reason and authority the foregoing opinion.

There also occurs to me a further objection of minor importance to this action. Under the charter of the railroad company it required "a majority of the taxable inhabitants" to vote for the subscription. The record of the county court only recites that "the taxable inhabitants aforesaid voted in favor of such subscription." It is not recited, nor found by the court, that a majority of the taxable inhabitants voted therefor, to say nothing of the constitutional provision of the state, then in force, which required a two-thirds vote of the qualified voters to authorize a subscription made outside of the provisions of the antecedent charter of 1860. The fact found by the county court does not necessarily imply that a majority of the taxable inhabitants voting at said election so voted.

Does the recitation on the face of the bond cure this defect in the record? It recites that the bond was "issued in pursuance of an election by the taxable inhabitants of Camden Point." This might conclude the county from disputing that an election was had, but

836 .FEDERAL REPORTER, vol. 54.

the peculiarity of this recitation lies in the fact, not only that it fails to state either a majority or a two-thirds vote, but that the election held was "by the taxable inhabitants of. Camden Point," whereas the election petitioned for and held was for a part of the municipal township of Greene, lying between given points. Camden Point, as appears from the face of the record of the county court, was a town at which the election was held. No vote of the inhabitants of Camden Point could have authorized the subscription; and no authority has been shown by the plaintiff for the issue of these bonds, other than the election held under section 7 of the charter, which is limited to the taxable inhabitants of the strip of country through which the railroad runs. When plaintiff resorts to the record of the county court to sustain his right, he must abide by what it shows.

It is hardly necessary to discuss the proposition advanced by counsel that the action of the county court has been ratified by any act done by it since the issue of the bonds. "He who may authorize in the beginning, may ratify in the end." Bank v. Gay, 63 Mo. 39. A ratification·can only occur when the party ratifying possesses the power to perform the act done. Marsh v. Fulton County, 10 Wall. 677.

On the facts of this case I declare the law to be that the plaintiff cannot recover. Judgment accordingly.